**Starr KELSO and "Jane Doe" Kelso, husband and wife, Defendants-Respondents.**

No. 14540.

Court of Appeals of Idaho.

Aug. 1, 1985.

---

704 P.2d 965

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Levi Wilfred MARTINEZ and Frank Martinez, aka Poncho Martinez, Defendants-Appellants.**

No. 15038.

Court of Appeals of Idaho.

Aug. 2, 1985.

Petition for Review Granted Nov. 14, 1985.

Van G. Bishop, Canyon County Public Defender, Nampa, for defendants-appellants.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman (argued), Deputy Atty. Gen., Boise, for respondent.

BURNETT, Judge.

This is an appeal by two brothers, Levi and Frank Martinez, who stand convicted of rape, lewd conduct with a minor, aggravated battery and second degree kidnapping—all committed against the same victim. Each brother received a thirty-year fixed term for the rape, a consecutive thirty-year fixed term for the lewd conduct, another consecutive fifteen-year fixed term for the aggravated battery and a concurrent indeterminate twenty-five year term for the second degree kidnapping.

On appeal, the brothers have raised two general issues: (1) Did the trial court err by admitting evidence of uncharged criminal conduct and of statements made before

the charged offenses were committed? (2) Should the sentences be modified, either because they represent multiple punishments for the same acts or because they are otherwise excessive? For reasons explained below we affirm the judgments of conviction, subject to adjustments in the sentences.

The facts of the case were hotly disputed at trial. The state's evidence showed that the Martinez brothers—men over twenty years of age—offered to give their second cousin, a twelve-year-old girl, a ride in Levi's automobile to a carnival. The girl, whose parents were not at home, accepted the offer. After stopping briefly at the carnival site, the threesome drove around the City of Nampa and drank wine in the car. The girl's requests to go home were unheeded. Eventually, they made their way to Lake Lowell. The girl, who admittedly had become "drunk," stumbled from the car. All three walked to the sandy shore of the lake, where one of the Martinez brothers struck the girl in the face. Both brothers then raped her. She also was sodomized. Moreover, a subsequent medical examination disclosed that a plastic cylinder, measuring approximately one inch by two inches, somehow had been forced through the rectum deep into her body.

The victim testified that she was reeling in and out of consciousness during the sexual assault. She remembered being dragged into the lake after the assault and hearing one of the brothers say he thought she was dead. She lost consciousness again and awoke while lying on a blanket in an alley near her home. Frank Martinez was there, hugging her. He later walked her to the house.

Another twelve-year-old girl, a friend of the victim who had been staying overnight with her, testified that before the victim returned home, Levi Martinez appeared. He stated that he and Frank had become separated from the victim after giving her a ride and that they were looking for her. The friend left the house with Levi, ostensibly to look for the victim. However, Levi drove her to a remote location where, after striking her in the face, he forced her to engage in sexual acts with him. During this incident, the friend observed wet and sandy clothes in the back of Levi's car. When Levi took the friend home, he told her to say nothing about what had happened.

The Martinez brothers denied engaging in any of this alleged conduct. Each relied upon an alibi defense. Levi testified—with some corroboration from other family members—that he had been at a third brother's house when the offenses occurred. Frank testified that he had been visiting a friend. Both admitted seeing the victim on the day in question but said they took her to the carnival and left her there. The jury evidently disbelieved this testimony. Verdicts of guilty were returned on the charges of kidnapping and rape; lewd conduct, pertaining to the sodomy; and aggravated battery, committed by inserting the plastic cylinder. This appeal followed.

## I

We first consider the brothers' challenge to the trial judge's evidentiary rulings. As noted, the victim's friend testified about uncharged criminal conduct by Levi toward her. In *State v. Matthews*, 108 Idaho 482, 484, 700 P.2d 104, 106 (Ct.App.1985), we recently summarized the rules governing such testimony:

Idaho courts have long recognized that evidence of other crimes is inadmissible merely to show an accused's criminal propensity. *State v. Needs*, 99 Idaho 883, 591 P.2d 130 (1979). However, evidence of extrinsic crimes may be admitted to prove the offense(s) charged with respect to (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other, (5) the identity of the person charged with the commission of the crime on trial, or (6) other similar issues. *State v. Wrenn*, 99 Idaho 506, 584 P.2d 1231 (1978); *State v. Boothe*, 103 Idaho 187, 646 P.2d 429 (Ct.App.

1982). If such issues are material to the case, and if the evidence is relevant to one or more of the issues, the evidence will be admitted unless its probative value is outweighed by its unfair prejudicial impact. *See generally* Nevin, *Other Crimes as Proof of Guilt,* THE ADVOCATE vol. 26, no. 10 (Nov.1983), p. 20. This balancing of probative value against unfair prejudice is committed in the first instance to the sound discretion of the trial court. *State v. Stoddard,* 105 Idaho 533, 670 P.2d 1318 (Ct.App.1983).

The testimony at issue in this case was relevant in two respects. It was relevant, first, to the question of identity. The witness's observation of the sandy clothes in the back of the car corroborated the victim's story. Moreover, the witness's testimony about the entire incident conflicted with, and was relevant to determining the truthfulness of, Levi's alibi. Secondly, the testimony was relevant to establish that Levi was engaged in a common scheme of sexually assaultive behavior on the evening in question. The incidents involving the victim and her friend were remarkably similar. They occurred within hours of each other. Both consisted of taking under-age girls from a house where they had no parental supervision, driving them on an ostensibly legitimate errand, and then ultimately diverting them to a remote location where sexual conduct occurred. Both girls were struck in the face to intimidate them. In our view, the *Wrenn* tests of relevancy were satisfied. We further note that the judge explicitly adverted on the record to weighing of probative value against prejudicial impact. He determined that the former outweighed the latter. We find no abuse of discretion in this determination.

The brothers also have challenged a ruling by which the trial court allowed a woman to testify about a conversation she had with Frank Martinez three days before the offenses occurred. She said that while she was attending a concert at the Western Idaho Fairgrounds in Boise, Frank Martinez, with whom she had not previously been acquainted, sat near her and struck up a conversation. He stated, according to the witness, "that all women were bad and they hurt you, that mothers raise their little girls to hurt men; and ... that he had been hurt several times by women, but he would never get hurt by one again, because if he did, he'd get down on them bad because he was quick...."

Defense counsel sought to exclude this testimony upon the ground of irrelevancy. However, it has long been recognized—and is now provided in Rule 401, Idaho Rules of Evidence—that evidence is relevant if it tends to make the existence of any fact, which is of consequence to determining the outcome of litigation, more probable or less probable than it would otherwise be. Here, there is a significant proximity in time and nexus of subject matter between the statements attributed to Frank Martinez and the assault upon the victim. The statements legitimately tend to make it more probable that Frank participated in the assault. We find no error in admitting the testimony.

The Martinez brothers further contend, as an extension of their attacks upon the evidentiary rulings, that each brother was prejudiced by evidence adduced against the other. Frank argues that he was unfairly prejudiced by the testimony of the victim's friend concerning Levi's activities; and Levi submits that he was unfairly prejudiced by testimony regarding Frank's statements three days before the offenses occurred. The brothers acknowledge that they did not request separate trials or other relief, such as cautionary instructions. But they suggest, upon the purported authority of *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960), that the district court was required *sua sponte* to order a severance or other relief.

We disagree. *Schaffer* imposes no such rigid obligation upon a trial court. Rather, in *Schaffer* the United States Supreme Court held that joinder of co-defendants is permissible if they allegedly have participated in the same act or transaction, or in the same series of acts or transactions, constituting the offenses charged.

The Court further noted that under Rule 14 of the Federal Rules of Criminal Procedure, a trial court "may" order separate trials "or provide whatever other relief justice requires" if the joinder is prejudicial. Rule 14 of the Idaho Criminal Rules contains similar language. The rule vests in a trial court sound discretion to order severance or other relief if prejudice appears to result from an initially proper joinder.

■ In this case, the joinder of the Martinez brothers clearly was proper in light of the offenses charged. Whether the district court abused its discretion by failing to order, upon its own motion, a severance or other relief turns upon the extent of ensuing prejudice. The burden of showing prejudice is borne by the party asserting it. *E.g., State v. Cochran,* 97 Idaho 71, 539 P.2d 999 (1975). Here, the showing is tenuous. It is unlikely that the jury was moved to convict Levi upon evidence of Frank's statement concerning his personal views toward women. On the other hand, it well may be that the jury was moved, in part, to convict Frank because of testimony concerning Levi's activities. However, such prejudice was not inherently unfair. To the extent that such evidence corroborated the victim's story and undermined Levi's alibi defense, it also had genuine probative value as to Frank. Prejudice arising from the probative impact of evidence is not unfair. Indeed, as we have noted, "Probative evidence is always prejudicial to someone." *State v. Fenley,* 103 Idaho 199, 203, 646 P.2d 441, 445 (Ct.App. 1982). We conclude that no abuse of discretion, in refusing to order a severance or other relief, has been established.

## II

We now turn to the sentencing issues. The brothers argue that the sentences for kidnapping, rape, lewd conduct and aggravated battery represent constitutionally and statutorily proscribed multiple punishments. They further submit that even if the sentences are legally permissible, they are unduly harsh. We will deal with each point in turn.

## A

■ The fifth amendment to the United States Constitution provides that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb...." This prohibition extends to double punishment for the same crime. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The test for determining whether two alleged crimes are separate or the same is whether each requires proof of a fact which the other does not. *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911). In this case each crime charged has been proved by a different set of facts. The kidnapping has been established by proof that the victim was taken from her parents' house and transported to Lake Lowell despite her requests to go home. The statutory rape has been established by acts of intercourse. The charge of lewd conduct has been shown by the sodomy. The aggravated battery has been proved by the bodily harm caused by insertion of the plastic cylinder into the victim's body. These fact patterns, although sequentially related, are distinctive. They establish different crimes.

■ The statutory prohibition against multiple punishment is contained in I.C. § 18–301:

An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

As we have seen, the instant case is not one where a single act or omission has been punished under more than one statutory label. Each statute required a different set of facts to support a conviction. We hold that the sentences imposed upon these convictions did not contravene the prohibition against multiple punishments.

B

Although the sentences are legally permissible, the question remains whether they represent a sound exercise of sentencing discretion. This question has evoked much concern, study and somber reflection by all members of our Court. Nothing so quickly lends itself to public misunderstanding than applying dispassionately, and upon a cold record, sentencing standards to a case where deplorable criminal conduct has fanned the flames of human emotion. But that precisely is our duty here.

We begin by noting that the consecutive thirty-year terms for rape and lewd conduct, the consecutive fifteen-year term for aggravated battery, and the concurrent, indeterminate twenty-five year sentence for kidnapping, when considered individually, are within statutory limits. But when the sentences are viewed collectively, and the consecutive terms are aggregated, the sentences represent, in effect, a fixed term of seventy-five years for each brother. Even if "good time" currently available as a matter of right under I.C. § 20–101A were awarded, the brothers would not be eligible for release from prison for fifty years. *See generally State v. Miller,* 105 Idaho 838, 673 P.2d 438 (Ct.App.1983). It is clear beyond cavil that such an aggregate term is virtually equivalent to a fixed life sentence—a sentence, in our view, more appropriate to the intentional and unlawful taking of a victim's life.

■ A sentence, or series of sentences, may represent an abuse of discretion if shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). The concept of reasonableness, as applied to sentence review, is explained in this familiar excerpt from *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982):

[A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sen-

tence of confinement longer than necessary for these purposes is unreasonable.

Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

Thus, the question in this case is whether confinement for at least fifty years is reasonable.

■ When weighing the facts of a given case, we conduct an independent examination of the record. We focus upon the nature of the offenses and the character of the offenders. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). The circumstances surrounding the offenses have been recited earlier in this opinion. However, the impact of the offenses upon the victim also must be noted. The rape and lewd conduct undoubtedly left deep psychological scars upon the twelve-year-old girl. To this mental and emotional cost has been added a unique and tragic physiological cost of the aggravated battery. The insertion of the plastic cylinder resulted in serious anal sphincter injury. An emergency operation was performed to remove the foreign object. The victim was forced to undergo additional surgery, including a colostomy, in an effort to repair the anal sphincter damage. The victim's attending physician informed the court that more surgery would be required in the future; that if such surgery were successful, the colostomy might be discontinued; but that the prognosis for a return of full sphincter control was doubtful.

We next consider the nature of the offenders. A characteristic shared by both brothers was their continued insistence, even after the verdicts of guilt had been returned, that they did not commit the crimes charged. Consequently, they accepted no responsibility for the victim's misfortune. Both brothers had prior

records free from any felony convictions. Each had misdemeanor convictions or juvenile dispositions. When the instant offenses were committed, both brothers were single and unemployed. Frank previously had been married and divorced. Levi recently had served in the United States Army but had been separated from the service with a general (other than honorable) discharge. Both brothers admitted past problems with alcohol abuse. The influence of alcohol weighed heavily in this case.

During the sentencing hearing, the court received testimony to the effect that Frank had been physically abusive to his former wife; that he had been overheard saying the victim in this case should have been killed; and that he had said he did not "get mad," he just "got even." Through defense counsel, Frank admitted making the latter comment; but he denied ever abusing his former wife or suggesting that the victim should have been killed. To the contrary, he claimed, he once saved his second cousin's life when she was a little girl.

The prosecutor recommended that each brother receive concurrent thirty-year fixed sentences for the rape and lewd conduct, together with a concurrent twenty-year fixed term for kidnapping and a consecutive fixed term of fifteen years for the aggravated battery. This recommendation, if implemented, would have resulted in an aggregate fixed sentence of forty-five years, with at least thirty years to be served with "good time." However, the district judge rejected this recommendation. The record makes it clear that he did so largely out of a personal sense of revulsion against the crimes committed. The judge stated:

> It's actually my opinion that your crime—they were so heinous, they showed such utter disregard for this—safety and well-being of this girl, that what would be appropriate for you would be the death penalty, but the law does not provide a death penalty for the crimes for which you were convicted, or

found guilty by the jury. But it wouldn't be inappropriate.

> I certainly think that your—your punishment ought to be commensurate with the suffering of your victim, and I think the state is being more lenient than I anticipated they would be.

As mentioned in the *Toohill* decision, sentence review is governed by the primary criterion of protecting society, together with the ancillary criteria of retribution, deterrence and rehabilitation. Taking these criteria in reverse order, it is clear that the district judge in this case ascribed no genuine significance to any prospect for rehabilitation. Confinement for fifty or more years affords no opportunity for the prisoners to lead a productive life in the future.

 General deterrence, by itself, might be a sufficient basis for imposing a substantial prison sentence. *E.g., State v. Adams,* 99 Idaho 75, 577 P.2d 1123 (1978). However, the district judge did not focus upon this criterion during the sentencing hearing. In any event, we believe the sentences exceeded those reasonably necessary to deter others from similar crimes.

 Retribution lies at the heart of the judge's decision. It is highlighted by his statement that the "punishment ought to be commensurate with the suffering of [the] victim." To be sure, vindication of the victim's rights is a legitimate and important component of retribution. Retribution also embodies a vindication of society's interest in condemning criminal conduct. But in our view, neither the interests of the victim nor those of society would be best served by attempting to weigh suffering and punishment on a simple scale. Many crimes—perhaps those at issue here—impose hardships, both overt and subtle, that never can be alleviated by punishment of the wrongdoer. Conversely, some crimes are "victimless," or impose relatively little hardship upon individuals, but they nevertheless demand a strong response from the criminal justice system in order to vindicate societal norms. In the case before us, we fully agree with the capable and consci-

entious district judge that the maximum fifteen-year sentence was appropriate for the aggravated battery. But we believe that the remaining sixty years, representing forty years in confinement with "good time," exceeds the period necessary to vindicate the rights of the victim and the interests of society as far as the rape and lewd conduct are concerned.

Finally, we come to the question of protecting society. The district judge made no comments directly upon this point. However, he did note his concern over Frank Martinez' disputed statement that the victim should have been killed. Such a statement, if made, would disclose a dangerous, sociopathic personality. We believe it was within the judge's sound discretion to fashion a sentence that would allow for the possibility of extended imprisonment if correctional authorities determined, after many years of closely observing Frank and Levi, that either of them would unduly threaten public safety if released. But the sentences imposed by the district court did not merely allow for such confinement; they mandated extended confinement regardless of whether the risk ultimately is found to exist.

■ Weaving all the sentencing criteria together, we conclude that the protection of society, retribution, deterrence and rehabilitation could be served adequately by sentences structured to provide for minimum confinement of thirty years. Conversely, we believe that sentences compelling longer minimum confinement are, under any reasonable view of the facts, excessive. Accordingly, we hold that the sentences should be modified as follows. The fixed sentence of fifteen years for the aggravated battery should remain intact and should be served first. The consecutive thirty-year sentences for rape and lewd conduct should be adjusted from fixed terms to indeterminate sentences. The concurrent twenty-five year, indeterminate sentence for kidnapping should remain unchanged.

Under this mix of sentences, with credit allowed for "good time" available as a mat-

ter of right, the sentence for aggravated battery would not be discharged until ten years had been served in confinement. No parole or discharge would be available on the consecutive thirty-year indeterminate sentences until at least ten years had been served in confinement on *each* of these sentences and a psychological evaluation had been completed. *See* I.C. § 20–223. If the Martinez brothers did not earn their parole, or if the evaluation did not show them to be safe for release, they could be held in further confinement for the duration of the unexpired sentence(s). In sum, this sentence structure requires not. less than thirty years' confinement and it authorizes more if needed to protect society. Obviously, these are still stiff sentences. But we are unpersuaded, on the present record, that any further adjustment is warranted.

Based upon the foregoing analysis, the judgments of conviction are affirmed insofar as the adjudications of guilt are concerned. The sentences are affirmed as modified herein. The case is remanded to the district court for entry of modified judgments consistent with this opinion.

SWANSTROM, J., concurs.

WALTERS, Chief Judge, concurring in part and dissenting in part.

I agree that the judgments of conviction in this case should be affirmed. I am unpersuaded, however, that the sentences should, at this time, be adjusted on appeal. As noted by the majority, whether the trial judge engaged in a sound exercise of sentencing discretion has been troublesome. I readily admit that the majority has formulated a sentencing structure for each of the defendants, on the various convictions, that will perhaps more adequately serve the objectives of sentencing than the terms imposed by the district judge. My concern, however, is whether such an adjustment is best suited in the appellate court than in the trial court, in this case and at this time.

We have held that we will not substitute our view of a case for the soundly exer-

cised discretion of a district judge on the choice of an appropriate sentence. *State v. Torres*, 107 Idaho 895, 693 P.2d 1097 (Ct. App.1984). The objectives of sentencing can seldom, if ever, be achieved in any given case to a degree of perfection. Here I am not convinced the district court failed to soundly exercise his discretion. I believe it would be more appropriate, for the district court, upon motion under I.C.R. 35 which is available to the defendants within 120 days following our affirmance of their convictions, to determine whether any alteration in the sentences is in order. *See State v. Gratiot*, 104 Idaho 782, 663 P.2d 1084 (1983).

A motion under Rule 35 essentially is a plea for a leniency which may be granted if a sentence originally imposed was, for any reason, unduly severe. *Torres, supra.* Such a motion also calls for the exercise of discretion by the sentencing judge. In this case, if such a motion were made and denied, further appellate review of the sentences could result, but only after the defendants had exhausted modification recourses available before the sentencing judge. On that basis, I would presently affirm the sentences, without modification.