723 P.2d 825

**STATE of Idaho, Plaintiff and Respondent,**

v.

**Levi Wilfred MARTINEZ and Frank Martinez aka Poncho Martinez, Defendants and Appellants.**

**No. 16240.**

Supreme Court of Idaho.

June 16, 1986.

On Denial of Petition for Rehearing Aug. 29, 1986.

Van G. Bishop, Nampa, for defendants and appellants.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff and respondent.

HUNTLEY, Justice.

By this appeal we are asked to review a decision of the Court of Appeals which, while affirming defendants' convictions of guilty for rape, lewd conduct with a minor, aggravated battery and second degree kidnapping, held that the district court had abused its discretion in imposing sentences.

We granted the state's petition for review pursuant to I.A.R. 118 to review the sole issue of whether the Court of Appeals erred in holding that the trial court had abused its discretion. The Court of Appeals reduced the fixed term sentences totaling fifty years to sentences which would

require the defendants serve not less than thirty years before being eligible for parole.

On a petition for review, we are not called upon to either affirm or reverse the decision of the Court of Appeals, but rather we must rule on the appropriateness of the sentence imposed by the trial court on the same record as that presented to the Court of Appeals.

The Martinez brothers offered to give their second cousin, a twelve-year-old girl, a ride to a carnival in Levi's automobile. The girl, whose parents were not at home, accepted the offer. After stopping briefly at the carnival site, the threesome drove around the city of Nampa and drank wine in the car. The girl's requests to go home were ignored. Eventually, they made their way to Lake Lowell. The girl, who admittedly had become "drunk," stumbled from the car. All three walked to the sandy shore of the lake, where one of the Martinez brothers tripped and then struck the girl in the face. Both brothers then raped her. She was also sodomized. Moreover, a subsequent medical examination disclosed that a plastic cylinder, measuring approximately one inch by two inches, had been forced through the victim's rectum deep into her body.

The victim testified that she was reeling in and out of consciousness during the sexual assault. She remembered being dragged into the lake after the assault and hearing one of the brothers say he thought she was dead. She lost consciousness again and awoke while lying on a blanket in an alley near her home. Frank Martinez was there, hugging her. He later walked her to the house.

Another twelve-year-old girl, a friend of the victim, testified that before the victim returned home Levi Martinez appeared. He told her that he and Frank had become separated from the victim after giving her a ride and that they were looking for her. The friend left the house with Levi, ostensibly to look for the victim. However, Levi drove her to a remote location where, after

striking her in the face, he forced her to engage in sexual acts with him. During this incident, the friend observed wet and sandy clothes in the back of Levi's car. When Levi took the friend home, he told her to say nothing about what had happened.

Soon after the victim's arrival home, she was seen by another one of her friends. The victim was lying on a bed and moaning. Her clothes were torn and ripped. When the friend asked what had happened, Frank responded that they had been in a car accident. The brothers left soon after, and the victim finally phoned for the police herself.

The victim was taken to a hospital where she was examined by several doctors. The examination disclosed a serious injury to the anterior wall of the rectum. The plastic cylinder had been inserted with such force that it ruptured the anal sphincter and resulted in a fist-sized opening in the victim's rectum. Moreover, there were numerous tears and lacerations of the anus and the rectum. The plastic cylinder had to be surgically removed. The victim also had to endure additional surgery, including a colostomy, due to the extensive anal sphincter damage. The prognosis for a return of full sphincter control at any time in the future is doubtful.

Evidence as to the brothers' characters showed that neither had a prior record of felony conviction. However, each had either misdemeanor convictions or juvenile dispositions. When the instant offenses were committed, both brothers were single and unemployed. Frank previously had been married and divorced. Levi recently had served in the United States Army but had left the service with a general (other than honorable) discharge. Both brothers admitted past problems with alcohol abuse.

There was testimony that Frank had been physically abusive to his former wife; that he had been overheard saying the victim in the instant case should have been killed; and that he had said he did not "get mad" he just "got even." There was further testimony that Frank Martinez had, at one time, stated "that all women were bad and they hurt you, that mothers raised their little girls to hurt men; and ... that he had been hurt several times by women, but he would never get hurt by one again, because if he did, he'd get down on them bad because he was quick...."

On the basis of the record above, the district court sentenced the brothers Martinez to a fixed thirty year sentence for rape; a fixed thirty year sentence for lewd conduct with a minor; a fixed fifteen year sentence for aggravated battery; and an indeterminate twenty-five year sentence for second degree kidnapping, with the rape, lewd conduct with a minor, and aggravated battery sentences to run consecutively, for a total fixed term of seventy-five years.

The Court of Appeals adjusted the sentences by changing the consecutive thirty year sentences for rape and lewd conduct from fixed terms to indeterminate sentences, while leaving the concurrent twenty-five year indeterminate sentence for second degree kidnapping and the fifteen year fixed sentence for aggravated battery unchanged. In effect, the Court of Appeals modified sentences which were tantamount to life imprisonment to sentences of approximately thirty years, with full discretion being vested in the parole board to ascertain whether, after thirty years, the protection of society and rehabilitation of the brothers would merit release on parole or continued incarceration.

This court has long held that the pronouncement of sentence is peculiarly within the discretion of the trial court and will not be disturbed on appeal in absence of clear abuse of discretion. *State v. Ogata,* 95 Idaho 309, 508 P.2d 141 (1973); *State v. Dunn,* 91 Idaho 870, 434 P.2d 88 (1967); *State v. Gish,* 89 Idaho 334, 404 P.2d 595 (1965). Moreover, a sentence fixed within the limits prescribed by the criminal statute involved will not ordinarily be considered an abuse of discretion by the trial court.

Pronouncement of sentence to be imposed is within the discretion of the trial court and will not be disturbed by this

Court in absence of abuse of discretion. A sentence fixed within the limits prescribed by the statute will not ordinarily be considered abuse of discretion by the trial court. *Dunn, supra,* 91 Idaho at 876, 94, 434 P.2d 88.

■ When called upon to review a sentence imposed by a trial court, we consider whether the sentence comports with the four objectives of criminal punishment: (1) protection of society; (2) deterrence of the individual and the public generally; (3) the possibility of rehabilitation; and (4) punishment or retribution for wrongdoing. *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978); *State v. Moore,* 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1957). Of these criteria, the "primary consideration is, and presumptively always will be, the good order and protection of society." *Moore, supra* at 363, 304 P.2d 1101.

■ In the instant case, the Court of Appeals held that the trial court had ascribed no real consideration to the possibility of rehabilitation and, as a result, had abused its discretion.

Upon review of the record, we are inclined to the view that the trial court did not abuse its discretion. In view of the particular difficulties in weighing the countervailing considerations in the instant case, we affirm the decision of the trial court and, if an I.C.R. 35 proceeding is initiated, the trial court may reexamine its sentence pursuant thereto.[1]

Under the Rule 35 proceedings, we invite the trial court to fully examine each of the considerations set forth in the majority and dissenting opinions of the Court of Appeals, and to provide full consideration and findings relative to the four primary sentencing criteria outlined in *Wolfe, supra.*

By way of guidance, we express our disagreement with a statement set forth in the majority opinion rendered by the Court of Appeals, specifically:

It is clear beyond cavil that such an aggregate term is virtually equivalent to a fixed life sentence—*a sentence, in our view, more appropriate to the intentional and unlawful taking of a victim's life.* (Emphasis added.)

Simply stated, such is not the law in Idaho. The people, acting by and through the legislature, have provided for fixed life sentences in no less than fifteen various statutes covering assorted criminal activities, some of which do not involve the intentional and unlawful taking of a victim's life.[2]

To the extent inconsistent herewith, the decision of the Court of Appeals is overruled and the decision of the trial court is affirmed.

DONALDSON, C.J., and SHEPARD, BAKES and BISTLINE, JJ., concur.

## ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice.

Doubting that the Court's opinion would or could be changed were a rehearing to be granted, and observing that the door is being specifically kept open in order that the trial court may reconsider the sentence

---

1. Ordinarily, however, direct appellate review is appropriate when challenging a sentence imposed by a trial court.

2. The Idaho State Legislature has provided that fixed life sentences may be given for the following crimes:

Lewd conduct with minor or child under sixteen, Idaho Code § 18–1508; First Degree murder, Idaho Code § 18–4004; Administering poison with intent to kill, Idaho Code § 18–4014; First degree kidnapping, Idaho Code § 18–4504; Obstruction or interference with railroad—Act causing death, Idaho Code § 18–6011; Rape, Idaho Code § 18–6104; Robbery, Idaho Code § 18–6503; Crime against nature, Idaho Code § 18–6605; Forcible sexual penetration by use of foreign object, Idaho Code § 18–6608; Aircraft hijacking, Idaho Code § 18–7501; Assault with intent to commit aircraft hijacking, Idaho Code § 18–7502; The manufacture or delivery, or possession with intent to manufacture or deliver, a controlled substance classified in schedule I which is a narcotic drug or a controlled substance classified in schedule II., Idaho Code § 37–2732; Certain distribution of controlled substances to persons under the age of 18, Idaho Code § 37–2737; Enhancement of certain violations of Idaho Code § 37–2732(a), Idaho Code § 37–2739A.

imposed, on another review of the opinion of the Court of Appeals, *State v. Martinez*, 109 Idaho 61, 704 P.2d 965 (1985), I write only to submit that that opinion is well written, and is patently sound. This Court's June 16, 1986 opinion failed to observe that the Court of Appeals rearranged the serving of the various consecutive sentences which had been imposed by the trial court. In doing so, that court was careful to affirm the fifteen-year fixed term for the aggravated battery and ruled that it would be served first, stating: "[W]e fully agree with the capable and conscientious district judge that the maximum fifteen-year sentence was appropriate for the aggravated battery." *Martinez, supra*, 109 Idaho at 69, 704 P.2d at 973.

The Court of Appeals, however, understandably was concerned with the imposition of thirty years for sexual crimes which, though labeled rape and lewd conduct, in essence were rape and sodomy— much as was so in the *State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985), which was worse only in that it culminated in murder. The Court of Appeals at p. 68 of 109 Idaho, p. 972 of 704 P.2d, set forth the trial judge's remarks at sentencing where he made clear his view that the defendants were appropriately entitled to the death penalty. At first blush, it is doubtful that many civilized persons would disagree with that view. I suspect that every judge or justice who has reviewed this case was at first of the same mind. But, as I comprehend the Court of Appeals decision, it is impermissible to allow sixty years to stand for the sex crimes and the related kidnapping, in addition to the fifteen-years for aggravated assault, where the sixty years appears to have been laid on in order to enhance beyond fifteen years the sentence for the savagely administered injury. Each crime should be punished independently, and it is my perception now that this is what guided the Court of Appeals in allowing the aggravated battery sentence to stand, while reducing the sex crime and kidnapping sentences. Accordingly, I do not believe that this Court should have interfered with the Court of Appeals decision. On prior occasions I have noted that it is that court which bears almost the entire brunt of sentence review. Our June opinion observes that "the Court of Appeals held that the trial court had ascribed no real consideration to the possibility of rehabilitation," p. 828, and that this is true is abundantly clear from that court's opinion, 109 Idaho at 67–69, 704 P.2d at 971–973. The Court of Appeals acted properly under Idaho case law in taking the action which it deemed appropriate. Nor does our June 1986 opinion say otherwise; nor could it. The Court of Appeals fulfilled its function by cranking in factors from *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978), which the trial judge, in his understandable and righteous outrage, refused to consider.

In a classic anomaly, our June 1986 opinion affirms the sentences imposed, but at the same time instructs the trial judge to consider the *Wolfe* case, and then re-examine its sentences in light thereof. This, of course, is exactly what the Court of Appeals sought to accomplish. While it is true that the Court of Appeals could have vacated the trial court judgment imposing sentences, and remanded for resentencing in light of *Wolfe*, it was equally proper for that court to modify the sentences as it did.