**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49591**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 28, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JOEL GUERRERO, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Jason D. Scott, District Judge.

Judgment of conviction and sentence of determinate life for rape, <u>affirmed</u>; order denying I.C.R. 35 motion for reduction of sentence, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Judge

Joel Guerrero appeals from the district court's sentence for rape. Guerrero argues that the district court abused its discretion by imposing a determinate life sentence. He also argues the district court erred by denying his Idaho Criminal Rule 35(b) motion. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Guerrero pled guilty to rape, Idaho Code § 18-6101. In exchange for his guilty plea, additional charges were dismissed.[1] The charges arose after Guerrero forcibly entered the home

---

[1] According to the plea agreement, the State dismissed the repeat sex offender enhancement, Idaho Code § 19-2520G; forcible penetration by use of foreign object, I.C. § 18-6604; kidnapping in the first degree, I.C. § 18-4501(1); and separate video voyeurism charges. The State recommended a life sentence with fifteen-years determinate.

1

of his ex-girlfriend (M.K.), where he raped, sodomized, and abused her. He bound M.K., muffled her mouth with clothes so that she fought to breathe, forced her to commit sexual acts, and hit her when she cried out. The attack lasted hours and once Guerrero stopped, M.K. could not flee due to her injuries. Guerrero told M.K. several times that she would not survive the attack and that he would kill her if she called the police. Guerrero eventually left M.K.'s home and police apprehended him weeks later.

During the sentencing hearing, the district court heard M.K.'s victim impact statement and testimony from another of Guerrero's ex-girlfriends; summarized Guerrero's presentence investigation report (PSI) and psychosexual evaluation (PSE); recited Guerrero's extensive criminal history; and considered both his mitigating and aggravating factors. Guerrero's prior convictions include aggravated assault, lewd conduct with a minor that involved Guerrero's three-year-old daughter, witness intimidation, as well as other misdemeanors and dismissed charges. At sentencing, Guerrero objected to testimony from a previous ex-girlfriend, arguing the statements presented due process issues. The district court stated it would only consider the prior criminal conviction but not the ex-girlfriend's testimony. The district court sentenced Guerrero to a determinate term of life. Guerrero filed an I.C.R. 35(b) motion, which the district court denied. Guerrero timely appeals.

## II.

## STANDARD OF REVIEW

Sentencing lies within the discretion of the trial court. *State v. Casper*, 169 Idaho 793, 797, 503 P.3d 1009, 1013 (2022). When reviewing whether the length of a sentence is excessive, the appellate court reviews all the facts and circumstances in the case and focuses on whether the trial court abused its discretion in fashioning the sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007); *State v. Baker*, 136 Idaho 576, 577, 38 P.3d 614, 615 (2001). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

2

# III.

# ANALYSIS

Guerrero argues that the district court erred by imposing a determinate life sentence and by denying his I.C.R. 35(b) motion for reduction of sentence. We will address each of his contentions in turn.

## A.       Determinate Life Sentence

Guerrero argues that the determinate life sentence imposed by the district court was an abuse of discretion. Specifically, Guerrero claims that the sentence is not supported by the nature of the offense and that the district court unreasonably assessed Guerrero's risk to society. The State argues that the district court appropriately considered all sentencing objectives, as well as the standards applicable to a determinate life sentence, and did not abuse its discretion.

A determinate life sentence requires a high degree of certainty that the defendant could never be safely released back into society or the nature of the offense requires that the individual spend the rest of his life behind bars. *State v. Fisher*, 162 Idaho 465, 469, 398 P.3d 839, 843 (2017); *State v. Windom*, 150 Idaho 873, 876, 253 P.3d 310, 313 (2011). "When reviewing a fixed life sentence, the primary factors considered are the gravity of the offense and/or the need to protect society from the defendant." *State v. Cannady*, 137 Idaho 67, 73, 44 P.3d 1122, 1128 (2002). "[A] fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society." *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct. App. 1988). Phrased differently, and considering the four goals of sentencing, a fixed life sentence is appropriate if necessary to protect society, to deter the individual and the public, if rehabilitation is unlikely, or if the behavior giving rise to the crime was so egregious that a determinate life sentence is necessary for proper punishment or retribution. *State v. Jackson*, 130 Idaho 293, 295, 939 P.2d 1372, 1374 (1997).

In this case, the maximum period of confinement allowed by statute is determinate life. I.C. § 18-6104. In assessing its sentencing determination, the district court considered all four of the objectives of criminal sentencing, expressly considered the nature of Guerrero's offense, and Guerrero's risk to society. The nature of the offense and the societal protection required go hand-in-hand corresponding to the crime's severity. *State v. Miller*, 151 Idaho 828, 835, 264 P.3d 935,

3

942 (2011). The district court characterized the offense as "very, very serious" and "absolutely horrific." The district court noted that Guerrero's criminal history indicated, "this [was] far from [his] first go-round with aggressive sexual behavior[.]" Applying the legal standard, the district court explained:

> But regrettably, others, like [M.K.], have been exposed to a much, much darker, less charitable, more violent person who does things that cause lasting hurt, damage, and are very worthy of serious punishment.
> 
> . . . .
> 
> The case law indicates that to impose a fixed life sentence requires a high degree of certainty that the perpetrator could never be safely released back into society or that the nature of the offense requires that the individual spend the rest of his life behind bars.
> 
> . . . .
> 
> Regrettably, that's where we are in this case. I struggle to see how you could ever be safely released back into society, given your body of work at this point. You are simply too dangerous.

### 1. The Nature of Guerrero's Offense Justified a Determinate Life Sentence

Idaho appellate courts have affirmed determinate life sentences in rape cases. *See State v. Cross*, 132 Idaho 667, 978 P.2d 227 (1999); *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992); *State v. Martinez*, 111 Idaho 281, 723 P.2d 825 (1986); *State v. Puglsey*, 128 Idaho 168, 911 P.2d 761 (Ct. App. 1995). The district court recited the relevant legal standards for imposing a determinate life sentence and concluded that the nature of the offense warranted a determinate life sentence. Determinate life sentences for sexual crimes are appropriate "where the defendant's conduct was 'violent, repetitive, very cruel, or life threatening.'" *Cross*, 132 Idaho at 672, 978 P.2d at 232 (quoting *Jackson*, 130 Idaho at 295, 939 P.2d at 1374).

Here, Guerrero's conduct was violent, cruel, and life threatening. Guerrero and M.K. dated for about a year before M.K. ended the relationship. Shortly after M.K. ended the relationship, Guerrero showed up at her house at about 12:30 in the morning. Guerrero forced his way in. He grabbed M.K. and pushed her down the hall towards her bedroom, saying "Bitch you are going to pay, I am going to fuck you up the ass, you are just going to take it." Guerrero forced M.K. face down on her bed and held her hands behind her back. He tied her wrists together behind her back because she was trying to get away from him. Guerrero raped M.K. for the next two hours. He forcibly inserted his penis into her anus and vagina, inserted a sex toy into her anus, and forced her to perform oral sex on the sex toy and on his penis. M.K. repeatedly begged Guerrero to stop, but, instead, he administered blows to her ribcage. He stuffed clothes into her mouth to muffle her

4

screams. M.K. thought she was going to suffocate to death because she was face down on the bed with her hands tied behind her back, her mouth was stuffed with clothing, and her nose was obstructed. Guerrero told M.K. while raping her, "This is what you get for breaking up with me." Guerrero repeatedly threatened to kill M.K. during the assault. He told her that he intended to "rape [her] ass all night until [she] died of the pain." He told her several times that she was going to die and that they were not leaving the house alive. He also threatened to break her neck and told her that the rape was about him having control over her, not about sex.

The district court properly found this crime to be horrific and something no one should have to go through. Guerrero argues that the nature of the offense was less egregious than in other cases and that a determinate life sentence is not warranted because M.K. did not suffer permanent physical injuries. The egregious nature of an offense does not require long-lasting physical effects; rather, the actual and threatened harm must entail a serious crime that significantly impacts the victim. *State v. Bickhart*, 164 Idaho 204, 206-07, 427 P.3d 836, 838-39 (Ct. App. 2018). Given the brutal, violent, and cruel nature of the offense, and in light of the objectives of criminal punishment and the standards applicable to a determinate life sentence, the district court did not abuse its sentencing discretion by imposing a sentence of life imprisonment without the possibility of parole.

### 2. Protection of Society Justified a Determinate Life Sentence

The district court considered Guerrero's PSI, PSE, criminal history, mitigating factors, and the sentencing objectives. The psychosexual evaluator concluded that Guerrero is a high risk to commit another sexual offense. The evaluator identified a host of factors contributing to Guerrero's high risk to reoffend, including:

> [His] attitudes supporting sexual offending, sadistic sexual interests, sexual entitlement, sexual preoccupation, utilizing sex as a method of coping, personality issues, mood management issues, impulse control issues, insight issues, substance use issues, socialization issues, hostile attitudes toward women, insufficient fear of consequences, failure to recognize his risk to re-offend, callousness, beliefs that support the manipulation of others, propensity towards rule breaking, poor problem-solving skills, and his re-offending with his third sexual offense after completing three sexual offense treatment programs.

The district court considered Guerrero's significant history of aggression and repeated sexual attacks and determined that Guerrero's violent sexual predilection could "hardly be

5

mitigated."[2] The district court considered this evidence in regard to whether a fixed life sentence was the only feasible means of protecting society, not in determining whether the nature of the offense charged in this case was sufficient to merit a life sentence. Guerrero was convicted of aggravated assault with a deadly weapon in 1992. In that case, after his ex-girlfriend broke up with him, Guerrero entered her home and then forced her onto the floor of her home, and removed her underwear while holding a knife to her throat. The victim covered her vagina with her hands, but Guerrero moved the knife down to where her hands were. In fear that he might cut her in her pubic area, she moved her hand and allowed Guerrero to penetrate her vagina with his penis while her two-year-old daughter watched.

Guerrero violated his probation by committing heinous crimes on at least two other occasions, including in 1995 by committing lewd conduct with a child. In the lewd conduct case, Guerrero molested his three-year-old daughter during a weekend visitation. Her hymen was damaged during the abuse, and the physical contact with her genitalia caused her to bleed and excrete feces into her underwear. Guerrero admitted that he fondled his daughter's vagina and buttocks and masturbated until he ejaculated on her buttocks. Guerrero was sentenced to twenty years in prison, but he was released on parole in June 2001.

In August 2011, Guerrero attempted to rape his wife. After she decided to leave him, Guerrero threatened to burn their house down and grabbed a gas can out of the garage and brought it into their house. When the police responded, Guerrero's wife disclosed that he had attempted to rape her on several prior occasions. Earlier that night, she awoke with her underwear below her knees and Guerrero standing over her grabbing her buttocks. She told him she did not want to have sex with him. At that point, he grabbed her by the neck, pushed her face into a pillow, forced himself on top of her, attempted to penetrate her, and told her he was going to have sex with her despite her repeatedly telling him no. She successfully resisted his attempts to rape her.

The district court found Guerrero's future rehabilitation potential and amenability to treatment wholly lacking. Although the psychosexual evaluator concluded that Guerrero was moderately amenable to treatment, the district court properly considered his history and concluded he presents an unacceptably high risk. Guerrero has participated in sex offender treatment three times. He has reoffended after completing each program. Although he asserts that he plans to

---

[2]     The district court agreed not to consider a witness's testimony regarding a charge dismissed in 1994.

change and could benefit from further treatment, nothing in his past or the circumstances of the present crime supports that possibility. Considering his prior crimes and rehabilitation efforts, the district court reasonably found the life sentence appropriate under the applicable legal standards. The district court articulated its rationale for imposing Guerrero's sentence and, based upon a review of the record, we conclude that the sentence is not excessive. For these reasons, the district court did not abuse its discretion by imposing Guerrero's determinate life sentence.

**B.      Rule 35(b) Sentence Reduction**

Guerrero argues that the district court abused its discretion when it denied his I.C.R. 35(b) motion for reduction of sentence. Guerrero offers evidence of good behavior since his incarceration. The State argues good behavior while incarcerated is expected and rebuts Guerrero's claim.

A motion for reduction of sentence under Rule 35 is essentially a plea for leniency, addressed to the sound discretion of the court. *State v. Knighton*, 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee*, 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct. App. 1989). In presenting a Rule 35 motion, the defendant must show that the sentence is excessive in light of new or additional information subsequently provided to the district court in support of the motion. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). A court may abuse its discretion if it unreasonably refuses to consider relevant evidence or otherwise unduly limits the information considered. *State v. Bayles*, 131 Idaho 624, 626-27, 962 P.2d 395, 397-98 (Ct. App. 1998). In conducting our review of the grant or denial of a Rule 35 motion, we consider the entire record and apply the same criteria used for determining the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct. App. 1987).

Guerrero asserts his behavior since incarceration is sufficient to justify a reduced sentence. We disagree. Guerrero's good behavior while in custody is expected. *State v. Fox*, 170 Idaho 846, 870, 517 P.3d 107, 131 (2022). As noted by the district court, Guerrero has not presented new or additional information to establish that his original sentence is unreasonable. *State v. Bakke*, 168 Idaho 226, 232, 481 P.3d 1197, 1203 (Ct. App. 2020). Upon review of the record, including the information submitted with his motion, we conclude the district court did not abuse its discretion in denying Guerrero's Rule 35 motion.

## IV.
## CONCLUSION

The district court did not abuse its discretion by imposing Guerrero's determinate life sentence. In addition, the district court did not abuse its discretion by denying Guerrero's I.C.R. 35(b) motion for reduced sentence. Therefore, we affirm Guerrero's sentence and order denying Guerrero's I.C.R. 35(b) motion.

Chief Judge LORELLO and Judge HUSKEY **CONCUR**.