776 P.2d 424

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kurtis L. BINGHAM,
Defendant–Appellant.**

No. 16940.

Supreme Court of Idaho.

June 15, 1989.

Don L. Harding, Soda Springs, for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

JOHNSON, Justice.

This is a criminal case in which Kurtis Bingham has appealed his convictions and sentences for statutory rape, lewd conduct with a minor and kidnapping in the first degree. Bingham has presented a multitude of issues. We have found most to be without merit. The issues that have enough merit to warrant discussion concern: (1) the failure of the trial court to grant Bingham an opportunity to have the victim examined by an expert witness to determine her competency and ability to receive and relate facts, (2) the admission of statements of the victim as excited utterances, (3) the admission of the opinion of a doctor on the question of whether penetration was with a penis, (4) the effectiveness of counsel in defending Bingham, (5) the refusal of the trial court to allow Bingham to call the victim as a witness at the hearing on his motion for a new trial, (6) the sentencing of Bingham for both rape and lewd conduct and (7) the excessiveness of the sentences. We affirm Bingham's convictions, his sentences for rape and kidnapping and the denial of his motion for a new trial. We vacate his sentence for lewd conduct on the ground that there is insufficient evidence in the record to establish that the acts alleged in the charge of lewd conduct occurred separately from the rape.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

The victim in this case was a girl who was twelve years old at the time of the events in question. She was retarded and had the mental age of a five year old. On the July evening in question, the victim went with her older sister to visit a friend of the sister. While the sister was visiting with her friend, the sister asked the victim to go and sit in the car that was parked nearby. Instead, the victim wandered to an apartment house on the same street. There she encountered Bingham who was sitting outside his basement apartment drinking beer and listening to music that was playing in his apartment. Ten to fifteen minutes later the sister went looking for the victim. She heard loud music and what she thought were screams. By looking through a basement window that was partly obscured with curtains, she saw the lower portion of what she thought were a man's legs on a bed in Bingham's apartment. She thought the legs were pointed downward and were moving up and down. After going downstairs to knock on the door of Bingham's apartment, she returned to the window and saw what she thought was a nude man walking across the living room of the apartment. She then returned with three of her friends and knocked on the door of the apartment again. After a few minutes Bingham, wearing a pair of dark shorts, opened the door. From the doorway the sister could see the victim sitting on the bed with the bed covers pulled up to her chest. When the sister went to the bed, she found that the victim had no clothes on and was crying. The sister got the victim dressed and took her to the car. The sister's three friends testified at trial that Bingham told them that he thought the victim "was old enough."

Bingham testified at trial that the victim had asked him if she could listen to the

music that was playing in his apartment, and that he said she could. He stated that about five minutes later he went inside, told the victim to leave and went into the bathroom. He said he had been in the bathroom for four or five minutes when he heard a loud banging on the door to his apartment. He maintained that he did not know that the victim went into the bedroom and that he did not have any sexual contact with her.

As the sister was taking the victim to the car, the victim was crying and shaking. A police officer arrived at the scene a short time later. The victim told the officer that she had gone downstairs with a "boy" to listen to music and that the boy had hit her and pushed her back. The officer then took the victim and her sister to the hospital so that the victim could be examined. The victim's mother arrived a few minutes later, and the officer resumed her questioning of the victim in the presence of the mother. The victim's mother testified at trial that the victim was upset when she arrived. The victim told the officer that the boy made her take her clothes off and that he took his clothes off. She told the officer that the boy had pushed her back and kissed her on the cheeks. She said the boy had squeezed and twisted her breasts. She indicated to the officer that the boy had touched her on her stomach, her thighs, her hips and around her genitals. She said the boy had laid on her and jumped on her. She told the officer that she had said "no," loudly several times. At trial the victim's mother corroborated what the officer said the victim had told her at the hospital.

At the hospital the victim was examined by a family doctor, Dr. Smith. The victim told Dr. Smith that a boy had laid on top of her. She said the boy had hurt her chest and her legs. She said the boy had made her take her clothes off. The doctor found a reddened or irritated area between the victim's vagina and her anus. The victim indicated that this area was very tender. The irritated area extended into the vaginal opening slightly, but did not extend as far as the hymen. Dr. Smith testified, without objection, that based on his examination of

the victim and the history that she had given him that it was his opinion that there had been an "attempted penetration" of the victim's vagina. He testified that the most likely cause of this attempted penetration was a penis.

Dr. Smith also performed a rape evidence kit examination of the victim. After Bingham was arrested the following day, a rape evidence kit examination was conducted on him also. The clothing of both the victim and Bingham as well as the bed clothes were also examined. No evidence of rape was revealed from any of these examinations.

Prior to Bingham's trial his court-appointed attorney moved "for leave to employ a child psychologist or some other qualified person to examine [the victim] to evaluate and report on her ability and competency to receive impressions of facts and relate them accurately." The trial court denied the motion.

Before the selection of the jury began at the trial of this case, it was revealed the trial judge had represented the victim's mother several years before, while he was a practicing attorney. After a full disclosure of the nature of the trial judge's representation of the victim's mother, Bingham decided not to disqualify the trial judge.

The victim did not testify at Bingham's trial. Her mother and the investigating police officer were allowed to testify over Bingham's objection as to the statements that the victim had made to them concerning what happened to her in Bingham's apartment.

The jury found Bingham guilty of rape, lewd conduct with a minor and kidnapping in the first degree. Bingham objected to being sentenced for both rape and lewd conduct on the ground they were not separate acts. The trial court sentenced Bingham to ten-year indeterminate sentences on the rape and lewd conduct convictions, to be served concurrently, and retained jurisdiction for 120 days. Bingham received an indeterminate life sentence on the kidnapping conviction, to be served consecutively

to the sentences for rape and lewd conduct. The trial court also retained jurisdiction as to the life sentence. Bingham was sent to the North Idaho Correctional Institution in Cottonwood so that he could participate in the sexual offender program there.

After the sentencing, Bingham secured new counsel before the review by the trial court following the expiration of the period of retained jurisdiction. Bingham then moved for a new trial. Among the grounds stated in the motion were newly discovered evidence and ineffective assistance of counsel.

At the conclusion of the period of retained jurisdiction, the trial court reduced Bingham's sentences to five years indeterminate on the rape and lewd conduct convictions, to be served concurrently, and to probation for life on the kidnapping conviction. The trial court denied Bingham's motion for a new trial. Bingham has appealed the convictions, the sentences and the denial of a new trial.

## II.

## DENIAL OF EXAMINATION OF VICTIM.

■ Bingham asserts that the trial court should have granted his motion for leave to employ a child psychologist or other expert to examine the victim and to report on her competency and ability to receive impressions of facts and to relate them accurately. Under the circumstances of this case, we conclude that the trial court did not abuse its discretion in denying this motion.

Bingham was determined to be an indigent person and counsel was appointed to represent him. Under I.C. § 19–852(a)(2) Bingham was entitled "to be provided with the necessary services and facilities of representation (including investigation and other preparation)." In *State v. Olin*, 103 Idaho 391, 395, 648 P.2d 203, 207 (1982), this Court provided the standard against which the trial court's decision to deny services and facilities of representation is to be measured:

It is thus incumbent upon the trial court to inquire into the needs of the defendant

and the circumstances of the case, and then make a determination of whether an adequate defense will be available to the defendant without the requested expert or investigative aid. If the answer is in the negative, then the services are necessary and must be provided by the state. Such a review necessarily involves the exercise of the sound discretion of the trial court.

Bingham stated in his motion that the reason he was requesting leave to employ an expert was because the state intended to offer the testimony of police officers, medical personnel and family members as to statements made to them by the victim. The motion concluded:

In effect, the alleged victim will be a witness against the Defendant by testifying at the trial through the mouths of said officers, medical personnel and family members. Therefore, Defendant will have no opportunity at the trial to challenge the competency of the victim to thusly testify or to otherwise impeach the testimony of said victim witness except through what information might be obtained as a result of an evaluation of her by a duly qualified child psychologist or other person properly trained in the evaluation of retarded children.

At the hearing on this motion, counsel for Bingham elaborated on the need for the expert assistance:

There is no way we can exercise our right to confront and cross examine [the victim]. That is a right that is very basic to a Defendant in a criminal case. The only opportunity that we would have to test the competency of [the victim] and to challenge her credibility would be through some testing done by a child psychologist or other qualified expert.

....

Therefore we are asking the Court to allow us to employ an expert, and I suppose it would be a child psychologist, who would examine [the victim] and we would ask for a court order that she be made available for that examination as the State's right to continue this prosecution, and that the expert determine her

ability or inability to perceive or experience an event and then recall it and accurately relate it.

Secondly, we would ask that the expert determine whether she knows and understands the difference between truth and falsity. Thirdly, we would ask that the expert evaluate and determine [the victim's] vulnerability to the power of suggestion. Almost everything incriminating that she has said against the defendant came in response to a very leading question and it is possible that she was simply responding with an answer that she thought the person asking the question wanted, being influenced by the power of suggestion. The evidence that will be introduced with respect to her statements are very incriminating, perhaps the best evidence the State has in this case, and short of having an expert evaluate [the victim] we are left without an opportunity to cross-examine that critical State's witness.

In opposing the motion, the prosecutor offered to agree that an expert should be appointed, if defense counsel would stipulate that the statements the victim had made to others would be admissible under the exceptions to the hearsay rule. The prosecutor pointed out that the victim's credibility and the reliability of the statements would have to be considered by the trial court before the statements could be admitted. He suggested that the remedy for all of the concerns that Bingham had about the statements was to call the victim as an adverse witness at trial. He referred to an examination of a child psychologist, Dr. Burke, who had examined the victim and who had testified at the preliminary hearing. Bingham's attorney countered by arguing that if the state were to call the victim as a witness, the trial court would have to determine her competency before she would be allowed to testify. The trial court denied the motion "on the grounds that there is sufficient evidence now and the examination is already done that will determine the problem [defense counsel] is mentioning." Apparently the examination to which the trial court referred was the one conducted by Dr. Burke. Since the transcript of the preliminary hearing is not part of the record before us, we are unable to review the content of that testimony. However, Dr. Burke did testify at trial. At trial his testimony was limited to his opinion of the mental age of the victim. For the purposes of our discussion here, we assume that his testimony at the preliminary hearing was similar.

The victim was not called as a witness at the trial either by the state or by Bingham. Statements she had made concerning the charges against Bingham were admitted through the testimony of Dr. Smith, the victim's mother and the police officer who questioned the victim after the incident. No objection was made to the testimony of Dr. Smith as to the statements the victim had made to him. Bingham's attorney objected to the testimony of the victim's mother as to the statements the victim had made to her. The trial court overruled the objection, except as to a statement that tended to indicate that Bingham had penetrated the victim with his penis. This statement was revealed in an offer of proof to the trial court and was never presented to the jury. Over Bingham's objection, the trial court also allowed the police officer to testify as to what the victim had told her about the incident.

Dr. Burke was called as a witness at the trial. He testified that based on his examination of the victim and her prior medical history the victim had a mental age of approximately five years. Defense counsel did not cross-examine Dr. Burke.

We are left with the question posed in *Olin* of whether an adequate defense was available to Bingham without the expert examination of the victim he sought. In reviewing this question in connection with Bingham's motion for new trial, the trial court noted:

> It was not necessary to have this mentally handicapped child of tender years examined by an expert to determine her 'ability to testify and recall events' as asserted by defendant, simply because she did not testify at trial.

In *State v. Filson*, 101 Idaho 381, 613 P.2d 938 (1980) the Supreme Court held it

was not necessary to order a psychological evaluation of prosecutrix absent a showing of compelling need. In the present case it was obvious that the victim was somewhat retarded and mentally handicapped, however, she attended school, reads, writes, did school homework and performed her household chores with reliability. With respect to her ability to communicate, the record is clear that the victim is able to discuss school activities and is capable of describing pain or illness to her mother, physicians and school teachers.

This rationale overlooks the real point of Bingham's motion—how to defend against statements made by the victim to others, when the victim herself was not called as a witness.

The trial court knew at the time of the hearing on the motion that the state did not intend to call the victim. The grounds used by the trial court in denying the motion ("that there is sufficient evidence now and the examination is already done") could hardly have been any solace to defense counsel. What Bingham's attorney needed to provide an adequate defense for his client was a means of testing the victim's competency and ability to perceive events correctly and report them accurately. It is precisely because the victim did not testify that this need was so great.

The ultimate question we must address is what use Bingham's attorney could have made of the testimony of an expert, if the motion had been granted, and if the examination had caused the expert to conclude that the victim could not perceive events correctly and report them accurately. The implication of Bingham's argument is that testimony of an expert would have been admissible to attack the credibility of the victim's statements. Bingham cites I.R.E. 806 as authority for the admissibility of this evidence. This rule provides that when a hearsay statement has been admitted in evidence, "the credibility of the declarant may be attacked."

This Court has held that "[t]he admissibility of expert testimony is discretionary with the trial court ..., and [that] absent an abuse of discretion, a decision will not be disturbed on appeal." *State v. Griffiths*, 101 Idaho 163, 165, 610 P.2d 522, 524 (1980); *State v. Hoisington*, 104 Idaho 153, 165, 657 P.2d 17, 29 (1983). In *Hoisington* we rejected expert testimony on the reliability of witness identification. In doing so the Court noted that " 'the trustworthiness in general of eye witness observations, was not beyond the ken of the jurors.' " 104 Idaho at 165, 657 P.2d at 29. The jury here had the benefit of the testimony of the victim's mother concerning the victim's mental retardation and her loss of hearing. The mother testified that the victim was reading and writing at the third grade level, that she enjoyed homework, played the guitar, played on an electric typewriter, helped with the dishes, cooked scrambled eggs in the microwave and took out the garbage. She stated that the victim was able to follow through with her instructions. She also said that the victim was able to communicate with her and to discuss her day at school accurately. The mother noted that the victim "doesn't understand lies, ... she doesn't understand not telling the truth, she tells it the way it happened." The mother also testified that she was able to confirm through a doctor that the victim accurately reported that she had an earache. She also said she could confirm the accuracy of the victim's reporting of instructions from teachers concerning homework. She stated that she was able to rely on what the victim told her and that the victim was able to understand what she told her.

Dr. Burke testified that although the victim was only about five years old mentally, this related to her potential for future learning and not to other areas of her functioning. With regard to the determination of her mental age he said:

However, it doesn't survey the total person, and therefore, there's many areas of her functioning that could be higher than that, because she obviously had over twelve years of experience of living, so even though we say she was at five, doesn't mean that her total makeup and total personality and total learning is at age five.

We conclude that there was no reasonable implication that the victim was impaired in her ability to correctly perceive events and accurately report them. Her handicap was in her potential for future learning. As in *Hoisington*, it was not beyond the ken of the jurors to determine the victim's ability to perceive events correctly and report them accurately. While we caution our trial courts not to deny appointed defense counsel the services and facilities they need to provide indigent defendants with an adequate defense, we are unable to say that the denial of an examination of the victim by a child psychologist or other expert in this case violated Bingham's rights under I.C. § 19–852.

## III.

### THE ADMISSION OF THE VICTIM'S STATEMENTS.

■ Bingham asserts that the statements the victim made to her mother and the police officer about Bingham's actions should not have been admitted as excited utterances under I.R.E. 803(2). We disagree.

We reject the argument that the victim's statements were not excited utterances within the meaning of this exception to the hearsay rule. In *State v. Parker*, 112 Idaho 1, 730 P.2d 921 (1986) this Court upheld the admission of the victim's taped statement to an Idaho Fish and Game officer two to three hours after the alleged rape. There we said:

> In sex crime cases, the excited utterance exception often receives broader application than in other cases. From the traditional admission of evidence of the fact of a victim's complaint of sexual assault, there has developed an expansion of the excited utterance exception under which many jurisdictions admit not only the fact of complaint, but its details. [Citations omitted.] ... The tendency to admit such statements, even when made hours after the event, probably lies in their high probative value. Given that sexual assault crimes violate one's most intimate physical and mental feelings, the victim can reasonably be expected

not to discuss the crime until meeting with a family member, close friend, law enforcement agent, or other trusted individual.

> . . . .

> A sexual assault is one of the most distressing experiences a person could have. The distress is likely to remain bottled up in the victim until she or he can talk about what happened.

112 Idaho at 4, 730 P.2d at 924.

This Court has traditionally followed the rule that the admission of excited utterances as an exception to the hearsay rule is left to the sound discretion of the trial court. *E.g., State v. Chacon*, 36 Idaho 148, 155, 209 P. 889, 891 (1922); *State v. Breyer*, 40 Idaho 324, 334, 232 P. 560, 564 (1925); *Parker*, 112 Idaho at 4, 730 P.2d at 924. Here, we conclude that the trial court did not abuse its discretion in admitting the statement of the victim to her mother and the police officer. The circumstances in which the victim made the statements at issue here support the decision of the trial court to admit them as evidence. The statements were made within two hours after the event. The victim's mother and the police office both testified that the victim was upset when she made the statements to them.

Bingham also argues that by allowing the victim's mother and the police officer to testify as to what the victim told them, the victim was allowed, in effect, to testify without taking the witness stand and without being subjected to cross examination. This position overlooks a basic principle of the law of evidence in this state. The admissibility of excited utterances is not dependent on whether the person making those statements is called as a witness, or is, in fact, competent to be a witness. I.R.E. 803 states:

> The following are not excluded by the hearsay rule, *even though the declarant is available as a witness.*

> . . . .

> (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the

stress of excitement caused by the event or condition. (Emphasis supplied.)

This makes it clear that the admissibility of excited utterance evidence does not depend on whether the declarant is available as a witness or not.

In *State v. Breyer*, 40 Idaho 324, 232 P. 560 (1925) this Court held that the statements of a wife that would otherwise be admissible under the excited utterance exception are not rendered inadmissible merely because the wife is not a competent witness in a criminal action against her husband. In *Breyer* this Court noted: "By the weight of authority the declarations of persons not competent to testify—for instance, infants—may be received as part of the *res gestae*." 40 Idaho at 335, 232 P. at 564.

We point out that there was never any determination that the victim was incompetent to testify. Neither the state nor Bingham put the trial court to the task of determining that question, since neither called the victim as a witness during the trial. We note that in considering an objection by Bingham's attorney during the testimony of the victim's sister, the trial court conducted a hearing out of the presence of the jury in the form of an offer of proof as to what the sister would testify the victim told her. During that hearing the trial court stated to the prosecutor:

> I'm going to require you at this time to inquire of the witness. I'm going to require that you lay a proper foundation, I'm going to require that you prove to my satisfaction that the time, content and circumstances of the statements have sufficient indicia of reliability as required by Idaho Code 19–3024. We will use this hearing at this time for the purpose of determining whether or not the proper foundation can be laid.

The statute to which the trial court referred provides:

> 19–3024. Statements by child.—Statements made by a child under the age of ten (10) years describing any act of sexual abuse, physical abuse, or other criminal conduct committed with or upon the child, although not otherwise admissible by statute or court, are admissible in evidence after a proper foundation has been laid in accordance with the Idaho rules of evidence in any proceedings under the child protective act, chapter 16, title 16, Idaho Code, or in any criminal proceedings in the courts of the state of Idaho if:
>
> 1. The court finds, in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statements provide sufficient indicia of reliability; and
>
> 2. The child either:
>
>    (a) Testifies at the proceedings; or
>
>    (b) Is unavailable as a witness. A child is unavailable as a witness when the child is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity. Provided, that when the child is unavailable as a witness, such statements may be admitted only if there is corroborative evidence of the act.
>
> Statements may not be admitted unless the proponent of the statements notifies the adverse party of his intention to offer the statements and the particulars of the statements sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statements.

Following the offer of proof, the trial court reserved ruling on the admissibility of the sister's proposed testimony as to the victim's statements to her. It appears that the subject of the victim's competency was never raised again during the trial. In any event, the testimony of the victim's mother and the police officer concerning the excited utterances of the victim were offered under I.R.E. 803(2) and not under I.C. § 19–3024. For that reason, and in view of *Breyer*, whether the victim was competent to testify or not is not the issue. The statements were admissible as excited utterances, regardless of whether the victim ever testified or was competent to testify.

## IV.

### ADMITTING DR. SMITH'S OPINION WAS NOT FUNDAMENTAL ERROR.

■ Bingham asserts that the trial court should not have allowed Dr. Smith to give

his opinion that the most likely cause of the reddened or irritated condition he observed when he examined the victim was "an attempted penetration with a penis." Dr. Smith based his opinion on the history he had taken from the victim, as well as his examination of the victim. Bingham's attorney did not object to Dr. Smith's testimony concerning his opinion. We must first consider whether the lack of objection forecloses our consideration of the merits of this issue.

As a general rule, in the absence of a timely objection to an alleged error at trial, this Court will not consider the alleged error on appeal. *State v. Sharp,* 101 Idaho 498, 503, 616 P.2d 1034, 1039 (1980). However, we have said that in the case of fundamental error in a criminal case we may consider the alleged error when it is raised on appeal, even though no objection was made at trial. *E.g., State v. Haggard,* 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *Smith v. State,* 94 Idaho 469, 491 P.2d 733 (1971) this Court distinguished between trial errors and fundamental errors and borrowed a definition of fundamental error:

A general definition of fundamental error was laid down by the Supreme Court of New Mexico in *State v. Garcia,* 46 N.M. 302, 309, 128 P.2d 459, 462 (1942):

"Error that is fundamental must be such error as goes to the foundation or basis of a defendant's rights or must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive. Each case will of necessity, under such a rule, stand on its own merits. Out of the facts in each case will arise the law." *See also, State v. Haggard,* 94 Idaho 249, 486 P.2d 260, 262 (1971).

94 Idaho at 475, n. 13, 491 P.2d at 739, n. 13. *See also, State v. Lankford,* 113 Idaho 688, 693, n. 2, 747 P.2d 710, 715, n. 2 (1987).

The discretion to admit expert opinion is vested in the trial court, and this Court will not overrule the trial court's decision to admit expert opinion unless there is a manifest abuse of discretion. *State v. Hoisington,* 104 Idaho 153, 165, 657 P.2d 17, 29 (1983). Even if we were to conclude that the trial court had abused its discretion in admitting Dr. Smith's opinion, that abuse would not constitute fundamental error. An abuse of discretion in admitting evidence is a trial error and does not go to the foundation of the case or take from the defendant a right which was essential to his defense. We do not mean to imply that the admission of Dr. Smith's opinion would have been a manifest abuse of discretion, if there had been an objection. We merely reject the invitation to address the issue, because there was no objection.

V.

### INEFFECTIVE ASSISTANCE OF COUNSEL.

Bingham asserts ineffective assistance of counsel on several grounds. After a review of the record in this case, we conclude that Bingham was not deprived of effective assistance of counsel.

Recently, we have restated the standards for determining whether a defendant has been denied effective assistance of counsel. *State v. Charboneau,* 116 Idaho 129, 774 P.2d 299 (1989). In *Charboneau* we pointed out that under the Constitution of the United States there is a strong presumption that counsel's performance falls within the wide range of professional assistance and that the defendant bears the burden of proof to show that counsel's representation fell below an objective standard of reasonableness. We also reiterated the test laid down by the United States Supreme Court that there must be proof that counsel's performance was deficient and a showing that this deficient performance prejudiced the defendant's case. We also stated that under the Idaho Constitution it is the burden of one claiming ineffective assistance of counsel to prove that counsel's conduct contributed to the conviction. We also reaffirmed that the starting point in evaluating counsel's conduct under our constitution is the American Bar Association's standards entitled "The Defense Function." (The ABA standards). *Id.* 116 Idaho at 137, 774 P.2d at 307.

424

Here, we find most of the grounds stated by Bingham in support of his contention that he was denied ineffective assistance to be wholly without merit. We find only three of the grounds to have sufficient merit to warrant addressing them specifically.

A. Failure to interview witnesses.

■ Bingham asserts that his trial attorneys did not interview any witnesses prior to the preliminary hearing and very few prior to trial, resulting in lack of preparation for these proceedings. Standard 4–4.1 of the ABA standards imposes on defense counsel the duty "to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case." Neither this standard nor the commentary that follows it imposes on defense counsel a duty that all witnesses must be interviewed before a preliminary hearing or before a trial. To impose this mandatory duty on defense attorneys would needlessly restrict their judgment as to which witnesses should be interviewed and when. While the failure to interview witnesses may constitute a deficiency in representation, each case must be judged according to the significance of the evidence the witness has to offer and what other sources are available to ascertain the testimony of the witness.

Bingham's trial counsel testified in conjunction with the motion for new trial that prior to the preliminary hearing he had interviewed Bingham and Bingham's mother and that his law partner had interviewed Dr. Smith and Dr. Burke. Bingham's trial counsel also testified that during his preparation for the trial of the case he spoke extensively with Bingham and reviewed with him in detail the police reports and the lab reports from the state forensic lab. Defense counsel also employed a private investigator and requested that he contact the victim's sister and her three friends who were at the scene when the victim was found in Bingham's apartment. The private investigator was able to interview the three friends of the sister, but not the sister herself, because he could not locate her. We note that the sister did testify at

the preliminary hearing. Defense counsel talked to one of the victim's teachers about the victim's school activities. He also tried to interview the victim in the presence of the prosecutor, but that proved futile because of the victim's unwillingness to talk about the incident. He interviewed the police officer who investigated the incident and who interviewed the victim and the police officer who arrested Bingham the day after the incident. An assistant to defense counsel interviewed a friend of the victim's sister to determine whether the sister was under the influence of alcohol or drugs. This review of the investigation that was conducted by defense counsel indicates to us that defense counsel made significant efforts to give Bingham an adequate defense and to prepare for the trial and tends to rebut any allegation of ineffective assistance.

Bingham argues strenuously that it was ineffective assistance for defense counsel not to have interviewed Dr. Smith before trial, even though he had testified at the preliminary hearing. Bingham contends that if defense counsel had done so, he would have discovered Dr. Smith's change of opinion concerning the attempted penetration. Defense counsel admitted that he was surprised by Dr. Smith's change in his testimony and that he was not prepared to deal with it. The record reflects that Bingham's attorney vigorously cross-examined Dr. Smith about the change in his opinion. With regard to the argument that the failure to interview Dr. Smith constituted ineffective assistance of counsel, the question we must answer is whether this failure fell below an objective standard of reasonableness or violated some basic duty of defense counsel under the ABA standards. We conclude that it did not. We are not prepared to impose on defense counsel the duty to interview before trial all witnesses that testified at the preliminary merely because it is possible that a witness might change the testimony given at the preliminary hearing. There is nothing in the record to indicate that Bingham's attorney had any reason to suspect that Dr. Smith would change his opinion. Therefore, we

conclude that the failure to interview the doctor did not constitute ineffective assistance.

Bingham also argues that his trial attorney should have interviewed his landlord and other tenants in the apartment house where he lived. He contends that these witnesses could have presented testimony about the visibility into his apartment through the window from which the victim's sister testified she made observations. We note that defense counsel presented photographic evidence of the window and what could be seen through it. He also cross-examined the victim's sister extensively about what she could see and presented the testimony of Bingham concerning what could be seen through the window. We find no ineffective assistance because defense counsel did not interview the landlord and the other tenants. Effective assistance of counsel does not require that defense attorneys interview every possible witness who might have something to say about a particular factual issue.

B. Failure to advise Bingham of automatic disqualification.

█ The judge who presided at the arraignment on the information was a magistrate who had been assigned by this Court to act as a district judge temporarily because of the resignation of a district judge. Bingham did not move to disqualify this judge. When the question of the possible disqualification of the district judge who was presiding at the trial of the case was considered, Bingham himself declared that he had no objection to this district judge presiding at the trial. Bingham now contends that the only reason he did not ask the district judge to disqualify himself was because he understood from his attorney that if the district judge did step down, the magistrate who had been appointed to preside during the early stages of the case would take over the trial. Bingham contends that under I.C.R. 25(a) he would have been entitled automatically to disqualify the magistrate without cause and have another district judge preside at the trial. Defense counsel admitted that he advised Bingham that if the district judge were

disqualified that the magistrate would be assigned to the case. He did not advise Bingham that he had a right to disqualify the magistrate automatically. Bingham asserts that this failure of his attorney properly to advise him of his rights constituted ineffective assistance of counsel. We disagree.

What Bingham overlooks in his analysis of this issue is that under I.C.R. 25(a) the automatic disqualification without cause must be made "not later than fourteen (14) days after service of a written notice specifying who the presiding judge or magistrate to the action will be." Since the magistrate had previously been assigned to act as a district judge in the case and since Bingham had not exercised his right to disqualify the magistrate at that time, Bingham would have had no right automatically to disqualify the magistrate, if the district judge had been disqualified. We note that the magistrate, sitting as a district judge by assignment, was scheduled to try this case when it was first set for trial. The fact that the trial was then rescheduled and the newly appointed district judge began to preside over the case did not reinstate Bingham's right automatically to disqualify the magistrate. Once Bingham had allowed the magistrate to sit on his case without disqualifying him, he did not have the option under I.C.R. 25(a) automatically to disqualify him without cause, if the magistrate were called back into the case to preside at the trial.

C. Failure to rebut Dr. Smith's opinion.

█ Bingham asserts that he was denied effective assistance when his attorney did not call another doctor to rebut Dr. Smith's opinion that the most likely cause of the reddened and irritated condition he found when he examined the victim was attempted penetration with a penis. We disagree.

Bingham's attorney attempted to impeach Dr. Smith's testimony on this point by using his testimony from the preliminary hearing. During this cross-examination Dr. Smith admitted that "the irritated area could have been caused by other

things than a penis, were the history not there at that particular time." When Bingham moved for a new trial, he presented an affidavit from another doctor who concluded that "it is impossible medically to state that the attempted penetration was with a penis." This doctor considered Dr. Smith's testimony both at the preliminary hearing and at trial in reaching this conclusion.

If Bingham's attorney had called this doctor to testify, he would have been subjected to cross-examination as to the implication of the history that Dr. Smith had taken from the victim. This history indicated that Bingham had made the victim take her clothes off, had laid on top of her and had hurt her chest and legs. Whether the doctor whose affidavit was submitted after trial would have continued to hold the same opinion in the fact of this history is a tactical consideration defense counsel would have to take into account.

Defense counsel chose to argue to the jury that Dr. Smith's opinion of "probable attempted rape" did not constitute evidence beyond a reasonable doubt. Whether this was the best way to deal with Dr. Smith's opinion or not, we will not second guess the decision made by Bingham's attorney. Therefore, we conclude that Bingham's attorney was not deficient in not calling another doctor to rebut Dr. Smith's opinion.

## VI.

### REFUSAL TO ALLOW BINGHAM TO CALL VICTIM AS WITNESS AT HEARING ON NEW TRIAL.

■ Bingham asserts that he should have been allowed to call the victim as a witness at the hearing on his motion for new trial. We disagree.

Bingham's motion for new trial was based, in part, on an allegation of ineffective assistance of counsel. At the hearing on the motion Bingham attempted to call the victim as a witness. The prosecution objected. Bingham's attorney argued that the purpose in calling the victim to testify was to determine whether there was effective assistance of counsel. He also contended that the failure to allow the victim

to testify deprived Bingham of the right of confrontation. He said that the victim "may be the one source that could clear Mr. Bingham of wrongdoing if she were permitted to testify, or even if she was permitted to testify today to the point of what she recalled back then." In refusing to allow Bingham to call the victim to testify, the trial court noted that Bingham's trial attorney had been given an opportunity to interview the victim in the presence of the prosecutor. The trial court also pointed out that the state had not called the victim as a witness at trial and that the testimony of Dr. Smith, the victim's mother, and the police officer as to what the victim told them about the incident had been admitted under exceptions to the hearsay rule. The trial court noted that these statements had sufficient indicia of reliability to be admitted into evidence at trial.

If the trial court had allowed Bingham to call the victim as a witness at the hearing on the motion for new trial and if the victim had recanted the statements she made to Dr. Smith, her mother and the police officer, that would not have proved that Bingham's trial attorney denied Bingham effective assistance by not calling the victim as a witness at trial. Bingham's trial attorney had attempted unsuccessfully to interview the victim before trial. It was a tactical decision whether to call the victim as a witness at trial, in the face of the testimony of three witnesses who testified that the victim had incriminated Bingham. We wonder what claim Bingham would be making now, if his trial counsel had called the victim, and if she had told the jury the same story she told Dr. Smith, her mother and the police officer.

## VII.

### THE SENTENCE FOR LEWD CONDUCT VIOLATED I.C. § 18–301.

■ The information filed by the prosecutor alleged statutory rape as the first count against Bingham. The second count was lewd conduct with a minor. The specific allegations of the lewd conduct charge

were that Bingham committed the crime upon the victim "by taking her clothes off, laying on top of her without his clothes on, squeezing her breasts and by touching her vagina, with the intent to arouse and gratify the lust and sexual desires of the defendant." The only evidence at trial as to the sequence of events concerning rape and lewd conduct was the testimony of Dr. Smith, the victim's mother and the police officer as to the statements the victim made to them. Nothing in those statements indicated when or how penetration may have occurred in relation to the acts that were alleged to have constituted lewd conduct. Whether penetration occurred at the same time as these acts, or before or after, would be purely speculative. If the victim had testified, she might have been able to make the sequence more clear, but she was not called.

In the conference on the proposed instructions the prosecutor stated that the evidence showed "two specific acts amounting to two different crimes and that's the reason we've charged Count I as Rape and Count II as Lewd Conduct with a Minor." The trial court instructed the jury that if they did not find Bingham guilty of rape on the first count they could find him guilty of lewd conduct. The trial court also instructed the jury that they could find Bingham guilty of lewd conduct on the second count. The jury found Bingham guilty of both rape and lewd conduct.

At the sentencing hearing Bingham's attorney argued that pursuant to I.C. § 18–301 Bingham could not be sentenced on both the rape and the lewd conduct convictions. He contended that the evidence did not clearly indicate the sequence of events: "There was testimony that Kurtis squoze [sic] her breasts, there was testimony that there was attempted penetration, but we don't know the sequence of those events. Whether one preceded the other or whether they were simultaneous, or whether one immediately followed the other." In sentencing Bingham for both rape and lewd conduct the trial court relied on *State v. Martinez*, 109 Idaho 61, 704 P.2d 965 (Ct.App.1985), *overruled on other grounds*, 111 Idaho 281, 723 P.2d 825

(1986). On appeal Bingham asserts that it was improper for the trial court to sentence him for lewd conduct. We agree.

I.C. § 18–301 provides:

**18–301. Acts punishable in different ways—Double jeopardy.**—An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other.

In *Martinez* our Court of Appeals upheld convictions for statutory rape, lewd conduct and aggravated battery based on a series of acts perpetrated against a twelve-year-old girl by two brothers. The savage events of the case were reported by the Court of Appeals:

All three walked to the sandy shore of the lake, where one of the Martinez brothers struck the girl in the face. Both brothers then raped her. She also was sodomized. Moreover, a subsequent medical examination disclosed that a plastic cylinder, measuring approximately one inch by two inches, somehow had been forced through the rectum deep into her body.

109 Idaho at 64, 704 P.2d at 968.

In upholding the sentencing for all three crimes the Court of Appeals stated:

The statutory rape has been established by acts of intercourse. The charge of lewd conduct has been shown by the sodomy. The aggravated battery has been proved by the bodily harm caused by insertion of the plastic cylinder into the victim's body. These fact patterns, although sequentially related, are distinctive. They establish different crimes.

. . . .

As we have seen, the instant case is not one where a single act or omission has been punished under more than one statutory label. Each statute required a different set of facts to support a conviction.

109 Idaho at 66, 704 P.2d at 970.

When this Court reviewed the decision of the Court of Appeals in *Martinez*, we ad-

dressed only the issue of whether the Court of Appeals erred in holding that the trial court had abused its discretion in sentencing the Martinez brothers to fixed term sentences totaling fifty years each. Only that part of the decision of the Court of Appeals was overruled. Since we did not overrule the decision of the Court of Appeals as it related to the application of I.C. § 18–301, that part of the decision is controlling precedent. *Hays v. State*, 115 Idaho 315, 766 P.2d 785 (1988).

Here, as distinguished from *Martinez*, the evidence does not permit the establishment of the sequence of events. The same set of facts supports both convictions. If the acts that were alleged to constitute the crime of lewd conduct were committed at the same time that penetration occurred, they were all part of one act and may not be punished under more than one statutory label. There is necessarily some lewd conduct involved in the act of rape. Only if a sequence of events is established that separates the acts of lewd conduct from the rape may the defendant be sentenced separately for lewd conduct. Therefore, we vacate the sentence for lewd conduct.

## VIII.

### THE SENTENCES WERE NOT EXCESSIVE.

■ Bingham asserts that the sentences as modified by the trial court were excessive. We disagree.

In *State v. Small*, 107 Idaho 504, 690 P.2d 1336 (1984) this Court succinctly stated the standard we employ in reviewing sentences that are asserted to be excessive:

> Where reasonable minds might differ as to the sufficiency of time of confinement, the discretion vested in the sentencing court in imposing sentence will be respected. *Holmes v. State*, 104 Idaho 312, 658 P.2d 983 (1983). Our task is one of deciding whether a clear abuse of that discretion has been affirmatively shown and the question is whether the sentence is unreasonable upon the facts of the case. To establish that the sentence im-

posed was improper, the defendant must show that in light of the governing criteria, her sentence was excessive under any reasonable view of the facts. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982).

107 Idaho at 505, 690 P.2d at 1337.

Here, Bingham's sentences for rape and lewd conduct were modified by the trial court to five years for each, to be served concurrently. By this opinion we have vacated the sentence for lewd conduct. Bingham's attorney advised the Court at the time of oral argument in this case that Bingham was scheduled to be paroled from the penitentiary on April 27, 1989. Under the facts of this case, we conclude that the five year sentence for rape was not excessive.

Bingham also is on probation for life on the kidnapping conviction. I.C. § 18–4504 requires a life sentence for first degree kidnapping unless the kidnapped person is liberated unharmed. The trial court found that the victim was harmed before she was released. Under the circumstances here, not only was the sentence not excessive, but also the trial court has shown leniency by suspending the execution of judgment on this sentence and placing Bingham on probation.

## IX.

### CONCLUSION.

We have considered the other issues raised by Bingham on this appeal and find them to be without merit.

We affirm the conviction of Bingham for rape, lewd conduct and kidnapping, the sentences for rape and kidnapping and the denial of his motion for new trial. We vacate his sentence for lewd conduct.

BAKES, C.J., and SHEPARD *, BISTLINE and HUNTLEY, JJ., concur.

* SHEPARD, J., sat and participated fully in the    opinion prior to his untimely death.