786 P.2d 1127

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Henry William SMITH, Jr.,
Defendant-Appellant.**

No. 17136.

Supreme Court of Idaho.

Jan. 31, 1990.

John C. Arkoosh, Gooding, for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

JOHNSON, Justice.

This is a criminal case in which a father was convicted of lewd conduct with his ten-year-old daughter. There are three issues presented on this appeal:

1. Should the trial court have instructed the jury that they were not required to reach a verdict, but might be a "hung jury?"

   We hold that the jury instructions were sufficient to advise the jury that they were not required to change their opinion simply to reach a verdict.

2. Did the trial court violate its own prior ruling or the rules of evidence in not restricting the daughter from testifying that her father had improperly touched her on other occasions?

   We hold that in allowing this testimony the trial court did not violate its prior ruling and did not violate the rules of evidence.

3. Should the trial court have restricted the cross-examination of the father's wife and rebuttal evidence offered by the state? The rebuttal evidence indicated that, contrary to her testimony on cross-examination, the father's wife had told investigating officers about other possible incidents of sexual misconduct by the father with his daughter.

We hold that the trial court did not abuse its discretion in allowing the cross-examination or in allowing the rebuttal evidence.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Smith was charged with fondling his ten-year-old daughter's vaginal area. He was tried twice for this offense. The first trial ended in a mistrial when the jury was unable to reach a verdict. In the second trial the jury found Smith guilty.

At the first trial the defense attorney attempted to impeach the testimony of Smith's daughter by referring to inconsistent testimony she had given in the preliminary hearing. This testimony concerned whether Smith had touched his daughter outside or inside her clothes. On redirect examination Smith's daughter testified, without objection, that Smith had touched her previously outside her clothes. The prosecutor then asked her how many times her dad had touched her in a place that she felt uncomfortable. In ruling on an objection to this question by the defense attorney, the trial court allowed the prosecutor to go into the daughter's explanation that the touching had happened at other times. However, the trial court refused to allow any other testimony as to other similar acts of Smith.

Before the second trial the defense attorney moved the trial court to reaffirm its previous ruling as to the testimony of Smith's two sons, "as well as that of any other third party, dealing with any other uncharged acts of misconduct [that] are not admissible under the provisions of Rule 404 of the Idaho Rules of Evidence." In ruling on this motion the trial court reaffirmed its "evidentiary ruling from the previous trial

... subject only [to] the Court's review of said rulings concerning rebuttal testimony."

During the second trial, Smith's daughter testified, without objection, that her father had done some touching of her "private spots," which she explained was her vagina. She also testified, without objection, that the touching took place "in his house and in the recliner and in his pickup and the van." Over objection by the defense attorney, the prosecutor was allowed to ask Smith's daughter where the last touching that she could recall took place. Also over objection, she was allowed to state how many other times he had touched her in places where she didn't think he should touch her.

Smith's wife, who was not his daughter's mother, was called as a witness for the defense during the second trial. On direct examination she testified that Smith's daughter never told her about the incident for which Smith was being tried. On cross-examination she testified, without objection, that Smith's daughter never told her about any incident of molestation by Smith. She was also asked by the prosecutor whether she told investigating officers that Smith's daughter had come to her and talked about Smith molesting her. The trial court overruled the objection of Smith's attorney that this question was outside the scope of direct examination. Smith's wife then answered: "She came to us and talked about the boys." The prosecutor then asked the question again. The defense attorney objected on the ground that the question had been asked and answered. The trial court overruled the objection. Smith's wife then answered that she did not remember Smith's daughter coming to talk to her about Smith molesting the daughter.

On rebuttal the state offered the testimony of two former deputy sheriffs who had questioned Smith's wife within three weeks after the incident for which Smith was tried. Over the objection that it was hearsay the first deputy was allowed to testify

that Smith's wife told him that Smith's daughter and the daughter of Smith's wife had come to Smith's wife and told her that Smith had been sexually touching them. The second deputy testified, without objection, that Smith's wife told him that Smith's daughter and the daughter of Smith's wife had told Smith's wife that Smith had been touching their private parts.

In the second trial the jury instructions included these:

JURY INSTRUCTION NO. 29

Both the citizens of the State of Idaho and the defendant are entitled to the individual opinion of each juror. It is the duty of each of you to consider the evidence for the purpose of arriving at a verdict if you can do so. Each of you must decide the case for yourself but you should do so only after a discussion of the evidence and instructions with the other jurors.

You should not hesitate to change an opinion you are convinced is erroneous. However, you should not be influenced to decide any question in a particular way because the majority of the jurors, or any of them, favor such a decision.

JURY INSTRUCTION NO. 30

You shall now retire and select one of your number to act as foreman who will preside over your deliberations. In order to reach a verdict, all twelve jurors must agree to the decision and to a finding you have been instructed to include in your verdict. As soon as all of you have agreed upon a verdict, you shall have it dated and signed by your foreman and shall return it to this courtroom.

The defense attorney did not object to these instructions. The jury found Smith guilty of lewd conduct with his daughter.

Within a few days after the trial the defense attorney moved for a new trial based on the affidavit of one of the jurors. A transcript of an interview of the juror by the defense attorney and the prosecutor was also presented to the trial court. The

thrust of both the affidavit and the interview was that the juror was not aware that the jury did not have to reach a verdict of guilty or not guilty and could be a "hung jury." The trial court denied the motion for new trial. Smith appealed.

## II.

### THE JURY INSTRUCTIONS.

Smith asserts that he was deprived of his constitutional right to a jury trial because the jury instructions did not properly instruct the jury that if they could not reach a unanimous verdict of guilty or not guilty, they could simply fail to render a verdict and become a "hung jury." We disagree.

■ We first note that the affidavit and transcribed interview of the juror are irrelevant to our consideration. If the instructions were adequate, it does not matter whether the juror misunderstood them or not. If the instructions were inadequate, the testimony of the juror is unnecessary to support reversal.

■ Next, we note that this Court has previously held that the failure to object to an instruction in a criminal case constitutes a waiver of the right to raise the instruction as an issue on appeal. *State v. Carter*, 103 Idaho 917, 919, 655 P.2d 434, 436 (1981). In support of this principle the Court in *Carter* cited I.C.R. 30 (effective July 1, 1980). The trial in *Carter* took place in 1978. Therefore, we conclude that the Court misspoke when the version of I.C.R. 30 that became effective in 1980 was cited. The reference should have been to the version of the rule in effect before the amendment.

Prior to July 1, 1980, I.C.R. 30 provided: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto prior to the time that the jury is charged." The 1980 amendment to I.C.R. 30 deleted this sentence. The amended rule contains subsections (a) and (b). The new I.C.R. 30(a) provided in 1980, as it does now: "The court shall inform counsel of its proposed actions upon the requested instructions and shall allow counsel a reasonable time within which to examine and make objections outside the presence of the jury to such instructions or the failure to give requested instructions."

Since the amendment of I.C.R. 30 in 1980 this Court has not spoken definitively about the effect of the amendment on the requirement to object to a proposed instruction at trial as a prerequisite to raising the propriety of the instruction on appeal. *But see Country Ins. Co. v. Agricultural Dev., Inc.*, 107 Idaho 961, 964 n. 4, 695 P.2d 346, 349 n. 4 (1985). In recent years there has been some difference of opinion in the decisions of our Court of Appeals as to the effect of the 1980 amendment on the right to appeal the giving of an instruction to which no objection was interposed at trial. *See State v. Eisele*, 107 Idaho 1035, 695 P.2d 420 (Ct.App.1985); *State v. Koch*, 115 Idaho 176, 765 P.2d 687 (Ct.App.1988); *State v. Randles*, 115 Idaho 611, 768 P.2d 1344 (Ct.App.1989) *aff'd in part* and *rev'd in part*, 117 Idaho 344, 787 P.2d 1152 (1990). In *Eisele* Justice Huntley of this Court, sitting as acting chief justice of the Court of Appeals, together with retired former Chief Justice McFadden of this Court, sitting pro tem., and retired District Judge Towles held unanimously: "I.C.R. 30 as amended does not preclude assignment of error in instructing where the defendant in a criminal case fails to object to the instructions in question." 107 Idaho at 1037, 695 P.2d at 442. The Court of Appeals adhered to this view in *Koch*. In *Randles* the Court of Appeals reversed its stand on the effect of the 1980 amendment to I.C.R.: "Until the Supreme Court decides otherwise, we will follow *Carter* in criminal cases—requiring timely objections to preserve claims of error, but continuing to review any claim of 'fundamental' error." 115 Idaho at 616 n. 4, 768 P.2d at 1349 n. 4. In the opinion of this Court on review of the decision of the Court of Appeals, no reference was made to this issue.

In order to clear up the uncertainty about the effect of the 1980 amendment to I.C.R. 30, we hold that the failure to object to an instruction at trial in a criminal case does not constitute a waiver of any objection to the instruction on appeal. It is apparent that the amendment to I.C.R. 30 that was made in 1980 was designed to parallel the amendments to I.R.C.P. 51(a)(1) made in 1976 and 1977. *See Country Ins. Co.*, 107 Idaho at 963, 695 P.2d at 348. By these amendments to our rules of civil and criminal procedure, this Court has indicated that it is not necessary to object to instructions in either civil or criminal cases in order to preserve an issue of the propriety of the instructions. Therefore, although Smith's attorney did not object to Instruction Nos. 29 and 30 before they were given, Smith may pursue the propriety of these instructions in this appeal.

■ Smith contends that the trial court should have instructed the jury that they were not required to reach a unanimous verdict, but could merely fail to find Smith guilty or not guilty, if they could not agree unanimously. In support of this argument Smith cites a model instruction of the Ninth Circuit, which includes this statement:

> It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Manual of Model Jury Instructions for the Ninth Circuit, 7.01, p. 98 (1985). Neither the comment to this model instruction nor any of the authorities cited in the comment indicate that the sixth amendment to the Constitution of the United States requires this instruction.

The American Bar Association's Standards for Criminal Justice (Trial by Jury), Standard 15-4.4 (2d ed. 1978) (the ABA Standards) contain the recommendation that before the jury retires for deliberation, the court may give an instruction which informs the jury, among other things, "that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict." This standard also provides: "The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement." However, there is no suggestion that the jury must be instructed before beginning their deliberations that they may be a "hung jury."

While we do not quarrel with the Ninth Circuit model instruction on this subject or with the ABA Standards, we conclude that the instructions given here, when read and construed together, were adequate to advise the jury of their right not to reach a verdict, if they could not do so. Instruction No. 29 told the jury that the state and Smith were entitled to the "individual opinion" of each of them. They were instructed that it was the duty of each of them "to consider the evidence for the purpose of arriving at a verdict *if you can do so.*" (Emphasis added.) This instruction also said that they "should not be influenced to decide any question in a particular way because a majority of the jurors, or any of them, favor such a decision." Instruction No. 30 instructed them that in order to reach a verdict, all of them must agree.

Reading and construing these two instructions together leads us to the conclusion that the jury should have understood that in order to reach a verdict they all had to agree, but that they were not required to reach a verdict, if they could not do so unanimously. We hold that Smith was not entitled to a more explicit instruction on the possibility of a "hung jury" in order to fulfill his right to a jury trial under either the United States Constitution or the Idaho Constitution.

## III.

### THE TESTIMONY ABOUT PRIOR ACTS OF TOUCHING.

Smith asserts that in the second trial the trial court should not have allowed the

testimony of Smith's daughter concerning prior acts of improper touching, because the testimony violated (1) the trial court's own order reaffirming the evidentiary rulings in the first trial and (2) our rules of evidence concerning the admissibility of evidence of other criminal acts. We disagree.

Smith's attorney did not object in the second trial to the first questions asked of Smith's daughter concerning the prior acts of touching. The question to which an objection was made asked: "How many other times has your dad touched you in places that you didn't think he should touch you?" After the objection was overruled, Smith's daughter answered: "A lot."

■ Smith premises his first attack on the admission of this evidence on the order of the trial court before the beginning of the second trial in which the trial court reaffirmed its evidentiary rulings in the first trial. However, Smith incorrectly contends that the trial court excluded the testimony of Smith's daughter concerning these prior acts in the first trial. The trial court ruled in the first trial that the prosecutor could ask Smith's daughter about these prior acts, because the defense attorney had opened up the subject by his attempts to impeach the daughter through the use of the preliminary hearing transcript. There was no ruling in the first trial restricting the testimony of Smith's daughter as to these prior acts. The trial court only restricted others from testifying about prior acts of Smith.

The troubling part about the admission in the second trial of the testimony of Smith's daughter concerning these prior acts is that the testimony came during the direct examination of the daughter, before any attempt had been made to impeach her credibility as the defense attorney had attempted at the first trial. However, during cross-examination of the daughter, the defense attorney again attempted to impeach her, this time through the use of not only the preliminary hearing transcript, but also the transcript of the first trial. Although it might be argued that the trial court

prematurely allowed the prosecutor to ask the daughter about how may times her father had touched her improperly on prior occasions, it would have been entirely consistent with the trial court's ruling in the first trial to have allowed the same questions during redirect examination after the attempted impeachment.

In ruling on the objection to the prosecutor's question concerning prior acts in the first trial, the trial court said:

I feel that so far as [the daughter's] concerned, that it's been sufficiently opened up, with referring to the preliminary transcript, that it seems to me the prosecutor should be allowed to go into her explanations that were elicited as to why she was nervous and also the explanation that it happened at other times.

If the defense attorney had not attempted to impeach Smith's daughter in the second trial by using the preliminary hearing transcript and the transcript of the first trial, we might find it necessary to make a different decision here. However, since he again attempted to impeach her in this manner, we hold that the trial court did not violate its own order reaffirming the evidentiary rulings in the first trial.

Smith premises his second attack on the admission of his daughter's testimony concerning the prior acts on I.R.E. 404(b) and 403. These rules provide:

**Rule 404.** ...

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**Rule 403.** Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.—Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Specifically, Smith contends that (1) the ruling of the trial court in the first trial that the admissibility of prior acts of misconduct was prejudicial to Smith was binding as to the admissibility of the testimony of Smith's daughter at the second trial, and (2) the state failed to lay a proper foundation establishing the prior acts were not too remote in time.

As to the first of these contentions, we again point out that the ruling of the trial court that restricted evidence concerning other acts in the first trial did not include the testimony of Smith's daughter. The trial court ruled in the first trial that her testimony concerning prior acts was admissible to rebut the attempts to impeach her because of inconsistencies between her testimony at the preliminary hearing and at trial. As to her testimony concerning the prior acts, in the first trial the trial court exercised its discretion under I.R.E. 404(b) and 403 and in admitting her testimony inherently concluded that (1) the testimony was not offered to prove Smith's character, but rather to show how his daughter might have confused the circumstances of one incident with another and (2) that the relevance of the evidence on this point was not substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by other considerations. Therefore, in admitting the testimony of Smith's daughter as to the prior acts in the second trial, the trial court did not contradict any binding ruling it had made at the first trial.

■ In support of his contention that the state failed to lay a proper foundation establishing the prior acts were not too remote in time Smith cites *State v. Clay,* 112 Idaho 261, 731 P.2d 804 (Ct.App.1987) (review denied), which relied in part on *State v. Boothe,* 103 Idaho 187, 646 P.2d 429 (Ct.App.1982) (review denied). In *Boothe* our Court of Appeals held "that if testimony of prior acts is to be admissible in sex crime cases, the prior acts must not be too remote in time...." 103 Idaho at 190, 646 P.2d at 432. There, the Court of Appeals upheld the admission of evidence of prior acts that had transpired over a five-year period ending approximately one year prior to the incident for which the defendant was being prosecuted.

Here, Smith's ten-year-old daughter testified that she had lived with her father from approximately April of 1986 until before Christmas of that year. All of the prior acts took place during this period. The second trial took place in July of 1987. These facts established the foundation that the prior acts were not too remote in time.

IV.

CROSS–EXAMINATION OF SMITH'S WIFE AND REBUTTAL TO HER TESTIMONY.

Smith asserts that the trial court should have restricted the cross-examination of his wife and the rebuttal offered by the state to her testimony. We disagree.

■ Smith contends that the cross-examination of his wife was beyond the scope of her direct examination. The specific question to which Smith's attorney objected on that ground was preceded by the following questions and answers:

Q. Mrs. Smith, as I understood your testimony in direct examination, you indicated that [Smith's daughter] has never told you that Bill was molesting her. Is that correct?

A. [Smith's daughter] never told me about an incident in December.

Q. Did she ever tell you about any incident involving Bill?

A. Involving Bill, no.

Q. Do you remember meeting with a couple of individuals from the sheriff's office on the 23rd day of December of 1986 regarding this incident?

A. Yes, I do.

Following this line of inquiry, the prosecutor then asked Smith's wife:

Q. Isn't it true, in that interview, you also indicated to them that in the early fall, possibly September, [Smith's daughter] had come in and complained about Bill molesting her?

It was at this point that Smith's attorney objected that the question was outside the scope of direct examination. In overruling the objection, the trial court said: "This relates to direct testimony." Based on the preceding answers Smith's wife had given, we agree. We do not believe the trial court abused its discretion in allowing the question to be asked.

■ In answering this question Smith's wife said: "I do not remember her coming to talk to me about Bill molesting her, I remember her talking about the boys molesting her." Smith contends that the testimony of the two former deputy sheriffs offered to impeach Smith's wife as to this answer was not proper because it was offered to prove an inconsistency between prior statements of his wife and her testimony on cross-examination rather than on direct examination.

Smith's attorney objected only on hearsay grounds to the testimony of the first deputy. He did not object to the testimony of the second deputy. Therefore, we will consider the alleged error only if we consider it to be fundamental. *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). Here, we are dealing only with impeachment of a collateral witness and not with the fundamental rights of the defendant. Therefore, we are inclined not to review this issue. However, because the issue is easily disposed of by existing authority we do so.

We start our analysis of this issue by stating the premise: "A trial court has broad discretion in the admission of evidence at trial. Its judgment will only be reversed when there has been a clear abuse of discretion." *State v. Terry*, 98 Idaho 285, 286–87, 561 P.2d 1318, 1319–20 (1977). We conclude our analysis by citing *State v.*

*Carter*, 103 Idaho 917, 922–23, 655 P.2d 434, 439–40 (1981). There, the prosecution was permitted to impeach the defendant's wife, who was called as a witness for her husband, as to a statement she made on cross-examination. We found no abuse of discretion there, and we find none here.

## V.

## CONCLUSION.

The judgment of conviction and the denial of a new trial are affirmed.

BAKES, C.J., and McDERMOTT, J. Pro Tem., concur.

SHEPARD, J., sat, but did not participate in this opinion due to his untimely death.

BISTLINE, Justice, concurring in part and dissenting in part.

There are two aspects of the majority opinion that are troublesome: (1) The opinion's acceptance of the jury instructions as adequate for purposes of informing each of the jury members that he/she could decide to be a hung juror rather than part of the crowd and (2) the opinion's explanation of why the testimony concerning Smith's other alleged bad acts was admissible.

I concur wherein the opinion holds that "the failure to object to an instruction at trial in a criminal case does not constitute a waiver of any objection to the instruction on appeal." At 231, 786 P.2d at 1131 (1990). However, the majority's treatment of the "hung jury" issue is unsatisfactory.

Smith's attorney moved for a new trial because one of the jurors was in a state of dismay because she had not been given to understand that the jury was not obliged to reach a unanimous verdict or that it was permissible to become a "hung jury." In response, the majority opinion asserts that "the affidavit and transcribed interview of the juror are irrelevant to our consideration. If the instructions were ad-

equate it does not matter whether the juror misunderstood them or not." At 230, 786 P.2d at 1130. Further on, when deciding whether the instructions were indeed adequate, the majority says "[r]eading and construing these two instructions together leads us to the conclusion that the jury *should have understood* that in order to reach a verdict they all had to agree, but *that they were not required to reach a verdict, if they could not do so unanimously."* At 231, 786 P.2d at 1131 (emphasis added).

If the standard for determining the adequacy of jury instructions is whether "the jury *should have understood"* the instructions, then there is no better evidence of any inadequacy than a statement from a juror that in fact he/she did not perceive that there was latitude to not agree.

Far better, I suggest we follow the course of the Ninth Circuit. Jury instructions which clearly inform jurors of all their alternatives, including the option of deadlocking and not returning a verdict at all are to be preferred.

The majority's approval of testimony from Smith's daughter that he had touched her at times other than those for which he had been charged is also unfortunate. At the first trial, the prosecution was allowed to elicit this testimony on rebuttal, but only because Smith's counsel had opened the issue by attempting to impeach the daughter's testimony with prior inconsistent statements. At the second trial the defense asked that this evidentiary ruling be renewed. The trial court did renew its ruling, holding that the other acts testimony would be allowed only on rebuttal, and presumably only if the defense opened the door to such questions. Yet at trial, over defense objection, the testimony was admitted on direct examination. A major problem is my present inability to understand why a ruling made at a first trial (mistrial) somehow is *a fortiori* sufficient reason for utilizing the same rule at a second trial.

The majority dismisses this objection by stating that, since the defense went ahead on cross examination and questioned the daughter about her prior inconsistent statements, no harm was done by allowing the prosecution to jump the gun. This reasoning is based on a number of erroneous assumptions. It assumes that the defense would be conducted in the same way at the second trial as it was at the first trial; it assumes that the defense would not opt to take advantage of the evidentiary ruling by declining to introduce the prior inconsistent testimony; and it assumes that the testimony would have the same impact on the jury whether it was introduced on direct examination or on the rebuttal. Long experience would indicate that these assumptions are unsound. The prosecution was allowed to put the cart before the horse when neither the defense nor the court even knew there would *be* a horse. As a result, Smith was required to defend himself, not only against the occurrences with which he was charged, but against an untold number of other "touches."

The majority also fails to recognize that, even when offered in rebuttal, evidence must be relevant to be admissible. Idaho Rule of Evidence 404(b) states:

> **Character evidence not admissible to prove conduct; exceptions; other crimes.—** ... (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The decision to admit evidence of other crimes, wrongs, or acts involves a two-tiered analysis. *See State v. Roach,* 109 Idaho 973, 712 P.2d 674 (Ct.App.1985). First, *as with all evidence, the proof must be relevant.* Here, for the testimony to be relevant it must pertain to one of the elements listed in I.R.E. 404(b): motive, opportunity, preparation, intent, plan, knowledge, absence of mistake, identity, or accident.

Secondly, having made the threshold determination of relevancy, it is *then* ascertained whether the probative value of the evidence is outweighed by unfair prejudice to the defendant. This balancing is left to the discretion of the trial judge and will be disturbed only if his discretion is abused. *Roach*, 109 Idaho at 974, 712 P.2d at 675.

In order for testimony concerning other "touches" to have been properly admitted, it should have been shown that the testimony was relevant for purposes other than to show Smith's *propensity* for such conduct. Such relevance is not evident from the record, and the State forwards no argument that the disputed testimony falls within the purview of I.R.E. 404(b). Rather, it is asserted that the trial court's decision that the probative value of the evidence outweighed any prejudicial effect to Smith should not be disturbed, absent an abuse of discretion. It appears that the trial court side-stepped the first tier of the two tier analysis which supposedly governs the admission of such evidence.

Discretion is properly exercised only when a rule of evidence calls for it. *State v. Maylett*, 108 Idaho 671, 674, 701 P.2d 291, 294 (Ct.App.1985) (Burnett, J. specially concurring). If, but only if, evidence of uncharged crimes is relevant to a permissible purpose, such as establishing motive, intent, absence of mistake, identity or a common scheme or plan, may the trial judge *then* exercise discretion in balancing the probative value against the likelihood of unfair prejudice. *Maylett*, 108 Idaho at 674, 701 P.2d at 294.

Here the need for the trial court to balance the probative value of the evidence against the prejudice to defendant need not have been addressed, because the relevance of the testimony had not been shown to fall within the purview of I.R.E. 404(b). Therefore, evidence of Smith's uncharged prior acts should have been ruled inadmissible in the trial court.