# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47389

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: May 5, 2021 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| MELISSA ANN ESTRADA, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Judgment of conviction, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Eric R. Lehtinen, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

Melissa Ann Estrada appeals from her judgment of conviction for forgery and grand theft of a financial instrument. Estrada argues the district court erred first in allowing evidence of her termination from her employment and second in allowing evidence that her employer sought to modify its procedures after it discovered Estrada's conduct. We hold that any error in allowing evidence of Estrada's termination was harmless; that the district court did not err in allowing evidence that Estrada's employer considered modifying its procedures; and that even if admitting the evidence was error, the error was harmless. Therefore, we affirm Estrada's judgment of conviction.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In March of 2018, Estrada worked as a housing advocate at Safe Passage, a non-profit organization that assists survivors of domestic violence and sexual assault. Safe Passage offers its clients a variety of services, including providing grant-funded financial assistance for housing. In June of 2018, Estrada was fired from Safe Passage for reasons unrelated to this case. Some months later, Estrada was charged with forgery in violation of Idaho Code § 18-3601 and grand theft of a financial instrument in violation of I.C. § 18-2407(1)(b)(3). The State alleged that Estrada fraudulently obtained two checks from Safe Passage to pay her own rent and that she submitted two financial assistance request forms, along with a forged lease agreement, to make it appear as though the checks were used to pay the rent of two of Safe Passage's clients.

Prior to trial, Estrada filed a motion in limine seeking to exclude all evidence regarding her work performance at Safe Passage, including her termination. The State objected to the motion and indicated that it intended to introduce evidence that Estrada was terminated from Safe Passage for work-related performance issues, but did not intend to introduce evidence of what those issues were. The district court denied the motion and stated it would allow the State to introduce evidence that Estrada was terminated from Safe Passage and that her termination led to the discovery of the documents the State believed supported the charges. The district court advised the State that it should make it clear to the jury that Estrada was terminated for reasons independent and unrelated to the case.

The case proceeded to trial where a jury convicted Estrada of both offenses. The district court imposed a unified term of incarceration of five years, with two years determinate, for each offense to be served concurrently, suspended the sentences, and placed Estrada on two years of supervised probation. Estrada timely appeals.

# II.

## STANDARD OF REVIEW

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Garcia*, 166 Idaho 661, 670, 462 P.3d 1125, 1134 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. Whether a fact is of consequence or

material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Raudebaugh*, 124 Idaho 758, 764, 864 P.2d 596, 602 (1993); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012).

Evidence, although relevant, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. I.R.E. 403. A trial court's determination under Idaho Rule of Evidence 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

The trial court has broad discretion in determining the admissibility of testimonial evidence. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *Id.*

## III.

## ANALYSIS

### A. Any Error by the District Court in Allowing Evidence of Estrada's Termination Was Harmless

Estrada argues the district court erred and abused its discretion by allowing the State to present evidence that she was fired from Safe Passage because the evidence was irrelevant and inadmissible. Alternatively, Estrada asserts that even if the evidence was relevant, its probative value was substantially outweighed by the danger of unfair prejudice and confusion of the issues and, therefore, the district court abused its discretion by admitting it. In response, the State argues the evidence was relevant and not unfairly prejudicial and, therefore, the district court did not err or abuse its discretion by admitting it. The State asserts that even if the district court did err in admitting the evidence, the error was harmless because the State presented clear evidence of Estrada's guilt and, therefore, the evidence of her termination could not have contributed to her convictions.

3

Error is not reversible unless it is prejudicial. *State v. Stell*, 162 Idaho 827, 830, 405 P.3d 612, 615 (Ct. App. 2017). The Idaho Supreme Court clarified the harmless error standard for an objected-to, nonconstitutionally-based error in *State v. Garcia*, 166 Idaho 661, 462 P.3d 1125 (2020). This standard requires weighing the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Id.* at 674, 462 P.3d at 1138. The reviewing court must take into account what effect the error had, or reasonably may have had, on the jury in the context of the total setting and in relation to all else that happened, which necessarily includes the evidence presented. *Kotteakos v. United States*, 328 U.S. 750, 764 (1946).

Even if the district court erred in admitting evidence of Estrada's termination, any alleged error was harmless because the probative force of the record as a whole considered without the alleged inadmissible evidence and when weighed against the alleged error, established Estrada's guilt for forgery and grand theft. In evaluating the probative force of the error, we note that out of approximately 265 pages of transcripts from Estrada's trial, her termination was mentioned only five times, including once by Estrada. Moreover, the State told the jury that Estrada's termination was for reasons unrelated to this case. Although Estrada argues being terminated "show[s] that she is a bad person," termination from employment occurs for many reasons other than an employee's unsatisfactory performance. Estrada has provided no evidence other than her opinion that jurors view employment termination in a negative light, particularly where the termination has nothing to do with the facts of the case. Accordingly, we conclude that the testimony regarding Estrada's termination from Safe Passage had minimal probative force.

Next, we weigh the probative force of the entire record while excluding the error. At trial, Patricia Wheeler, the office manager at Safe Passage and Estrada's former supervisor, testified that Estrada's duties involved meeting with clients to discuss housing issues, referring clients to external services, determining whether clients were eligible for financial housing assistance from Safe Passage, and creating and maintaining physical files for each client. After meeting with a client requesting assistance, Estrada would complete an assistance request form on behalf of the client, which often included financial assistance for housing. Additional documents typically accompanied the assistance request form, such as a lease or an eviction notice. Occasionally, an assistance request form would be delivered to Wheeler with an indication that the client would provide supporting documentation at a later date. Once the form was completed, Estrada would

4

take the request and any supporting documents to Wheeler. The two would usually discuss the request.

If an assistance request was for less than $300.00, Wheeler would approve the request, sign the form, and take it to the finance director, Harold Mac Rebmann, Jr., who would issue a check payable to the housing vendor. The checks were then signed by Chauntelle Lieske, the executive director of Safe Passage. If the check was for an amount greater than $300.00, it required an additional signature from a board member. Once signed, the checks were mailed to the housing vendor or given to Estrada for disbursement.

When Estrada was terminated from Safe Passage in June of 2018, Wheeler was tasked with reviewing any client files left in Estrada's desk. Wheeler testified that she discovered client files and loose paperwork left in Estrada's desk. The State introduced the loose paperwork found in Estrada's desk as four exhibits. Exhibit 1 consisted of multiple pages. The second page of Exhibit 1, listed as page 2A, was a property management lease with the name and address of "Active Property Management." Pages three and four of Exhibit 1, listed as pages 2B and 2C, were the remaining pages of the lease with the "Active Property Management" heading. Exhibit 2 was a residential lease agreement virtually identical to pages 2B and 2C of Exhibit 1, but a piece of paper with the name and address of Vista Property Management had been cut out and taped over the heading of the document.

Read together, Exhibits 1 and 2 purported to demonstrate that Estrada had used a lease for Active Property Management but altered the heading of the lease to look as if the lease were for Vista Property Management. Exhibit 3 was a photocopy of Exhibit 2. Exhibit 4 was a Three-Day Notice to Pay or Quit that did not list an address. Wheeler testified that the name listed on Exhibit 4 appeared to have been altered by deleting the name of the original person and inserting the name of an existing Safe Passage client over the original name.

Wheeler attempted to match all the loose paperwork to a client file but was unable to do so. Based on the appearance of the documents and her inability to match them to a client file, Wheeler concluded the documents had likely been tampered with and took them to Lieske. When Lieske was unable to link the documents to any client files, she and Wheeler took them to Rebmann and requested that he generate a report identifying all of the checks Safe Passage had issued for housing during that time period. Rebmann created the report and gave it to Wheeler.

5

Wheeler used the report to determine that check number 16051 for $450.00 and check number 16052 for $200.00 had been issued to Vista Property Management on March 8, 2018. The $450.00 check was signed by Lieske and a member of Safe Passage's board; the $200.00 check was signed only by Lieske.

Wheeler determined that the two checks were issued in response to two housing assistance request forms that had been given to her by Estrada. The forms were dated March 7, 2018, and were completed in Estrada's handwriting. Each form included a client identification number and listed Vista Property Management as the housing vendor. One of the forms had a note attached indicating that additional documentation in support of the request was forthcoming. The additional documentation was the forged pay or quit notice (Exhibit 4).

In additional to the physical file Estrada kept for each client, Safe Passage maintained an electronic client file. Wheeler reviewed both the physical and electronic reports for the two clients identified on the assistance request forms. The reports showed that although the clients existed, neither had requested housing assistance, nor had they obtained housing through Vista Property Management.

Jill White, the office manager for Vista Property Management, testified that Estrada rented her home through Vista. White testified that in March 2018, Estrada was behind on her rent, so White posted a Three-Day Notice to Pay or Quit on the door of Estrada's home and mailed a copy of the notice to Estrada. Through White, the State introduced a copy of Estrada's lease agreement with Vista Property Management (Exhibit 14) and a copy of the pay or quit notice that had been mailed to Estrada (Exhibit 15). Aside from the name listed at the top of the document and the absence of an address, the pay or quit notice that had been sent to Estrada was identical to the pay or quit notice that had been altered and introduced as State's Exhibit 4.

On March 12, 2018, Estrada sent an email to White, stating in part:

I got the 3 day notice. We are waiting on a board member to sign checks, our payroll person was let go and they didn't prepare enough in advance to have check as well as reimbursement for travel taken care of. I asked that my reimbursement checks be made directly to Vista property to skip the wait for it to clear. This month's rent will be paid in full by friday.

On March 19, 2018, Estrada sent another email to White, informing her that "Two checks should have been either mailed or taken there by friday. The third check is being signed this afternoon and taken tomorrow." On May 14, 2018, Estrada emailed White asking: "Can u please let me know the total amount you received from Safe Passage because it should have been 650.00."

6

White testified that Vista Property Management received two checks from Safe Passage in the amounts of $200.00 and $450.00 that were deposited into Vista's account on March 19, 2018, and credited to Estrada's tenant account.

Theresa Dawson, the bookkeeper at Vista Property Management, also testified that Estrada was behind on her rent in March 2018 and that after Estrada was given the pay or quit notice, Dawson received two checks from Safe Passage that were credited to Estrada's account. Dawson said that shortly before receiving the checks from Safe Passage she had received emails from Estrada indicating that there had been an error in her pay from Safe Passage and to anticipate checks mailed directly to Vista Property Management from Safe Passage. Dawson explained that Vista Property Management had not received checks from Safe Passage for Estrada's rent payment prior to the two it received in March. Dawson also reviewed State's Exhibit 4--the allegedly altered Three-Day Notice to Pay or Quit--and testified that to her knowledge, the individual listed on the notice had never been a tenant with Vista Property Management.

Wheeler, Rebmann, and Lieske each testified that they had never given Estrada permission to pay her own rent using Safe Passage funds. Detective Jacob Pleger, who conducted the investigation into Estrada's conduct, testified that during his investigation he spoke with Estrada, who said she was not authorized to use Safe Passage funds to pay her own rent, but she did not confirm whether she had done so. Estrada did not present any evidence on her behalf.

The district court instructed the jury that in order for Estrada to be guilty of forgery, the State was required to prove that Estrada: (1) with the intent to defraud another, falsely altered, forged or counterfeited a contract; and/or (2) did pass or attempt to pass as true and genuine a false, altered, forged, or counterfeited contract knowing the same to be false, altered, forged, or counterfeited, with the intent to prejudice, damage, or defraud any person. Next, the district court instructed the jury that in order for Estrada to be guilty of grand theft, the State was required to prove that Estrada: (1) wrongfully took, obtained or withheld property described as a check and/or checks with the numbers 16051 and/or 16052; (2) from an owner; (3) with the intent to deprive an owner of the property or to appropriate the property; and (4) the property was a check, draft, or order for the payment of money upon any bank.

Weighing the probative force of the entire record while excluding any alleged error, admitting evidence of Estrada's termination did not contribute to the jury's verdict on either charge. Beginning with the forgery charge, the State's evidence demonstrated that Estrada had

7

altered a client's lease agreement by taping a piece of paper with the name and address of "Vista Property Management" over the name and address of "Active Property Management." Estrada then photocopied the document so the insertion of the paper would be less noticeable and would create the appearance of an authentic lease agreement with Vista Property Management. The testimony indicated that Estrada likely prepared the fraudulent lease in the event that Safe Passage requested additional documentation in support of the fraudulent financial assistance requests. Thus, the evidence established that Estrada prepared the document with the intent to defraud Safe Passage; falsely altered, forged, or counterfeited a contract by "cutting and pasting" the name of "Vista Property Management" over the name "Active Property Management"; and knew the altered lease agreement to be false, altered, forged, or counterfeited, with the intent to prejudice, damage, or defraud Safe Passage in the amount of the payments. Although Estrada may not have presented the forged lease to any Safe Passage employees, such conduct is not necessary to find Estrada guilty of forgery. Based on this evidence, there was more than sufficient evidence, unrelated to the testimony that Estrada was terminated, from which the jury could conclude beyond a reasonable doubt that Estrada falsely altered the lease agreement with the intent to defraud Safe Passage and, therefore, was guilty of forgery.

In support of the grand theft charge, the State presented evidence that Estrada obtained two checks from Safe Passage under the false pretense that the checks were for a client of Safe Passage. Estrada altered and falsified multiple documents, including the pay or quit notice and two housing request forms, in order to obtain checks made out to her own property management company to pay for her past-due rent. Estrada mailed the checks to Vista Property Management, which deposited the checks and credited the funds to Estrada's past due account. Based on this evidence, the jury could conclude, beyond a reasonable doubt, that Estrada wrongfully took, obtained, or withheld check numbers 16051 and/or 16052 from Safe Passage with the intent to either deprive Safe Passage of the money or to appropriate the money and Estrada was thus guilty of grand theft of a financial instrument.

Considering the entirety of the record establishing guilt, we conclude that admitting evidence of Estrada's termination did not contribute to the jury's verdict on either charge. Therefore, the error was harmless.

**B.     The District Court Did Not Err in Allowing Evidence That Safe Passage Sought to Modify Its Procedures in Response to Estrada's Conduct, But Even if It Did Err, Such Error Was Harmless**

Estrada argues the district court abused its discretion by allowing the State to introduce evidence that Safe Passage modified its procedures in response to Estrada's conduct. Estrada asserts that evidence regarding procedural changes made by Safe Passage was inadmissible. In response, the State argues that Estrada failed to preserve this argument for appeal. Alternatively, the State asserts that the district court did not abuse its discretion in allowing the evidence, but that even if the district court did err, the error was harmless.

**1.     The district court correctly ruled on the first objection**

At trial, the topic of procedural changes was first raised when Estrada asked Wheeler if Safe Passage had changed its procedures for issuing housing assistance checks after March of 2018. The exchange was as follows:

| Estrada's counsel: | Okay. And when you say that, was it an amount that was above $300 that would require more than one signature? |
| Wheeler: | At that time that was the policy. |
| Estrada's counsel: | Okay. Has that changed? |
| Wheeler: | I don't know. You'd have to clarify that with Chauntelle [Lieske]. |

Estrada's counsel later asked Lieske the following:

| Estrada's counsel: | Did anybody from VOCA [the grant provider] encourage you to update your practices in 2018? |
| Lieske: | No. |

On re-direct, the State asked Lieske: "So, Ms. Lieske, you indicated that it's a different process now than it was back in March of 2018. When this was discovered back in June of 2018, did Safe Passage seek to revamp their housing assistance request program?" Estrada objected: "Judge, objection under rule of evidence regarding remedial measures. I think it's not admissible." The district court responded: "Overruled on those grounds." Lieske answered the State's question: "Yes, we did."

The State then asked Lieske: "And what type of changes were made?" and Estrada objected: "Judge, I'm going to object again on the same basis. I know under the rules of evidence that type of evidence is not permitted." The district court asked Estrada which rule of evidence she was relying on, and Estrada cited I.R.E. 407. In response, the State argued that I.R.E. 407 was inapplicable. The district court sustained Estrada's objection, stating: "I'm going to sustain the

9

objection. And I'm going to sustain it on the basis that it's not relevant what happened after the fact."

Estrada takes issue only with the district court's ruling on the first objection. Estrada argues, for the first time on appeal, that evidence that Safe Passage sought to change its procedures should have been excluded as irrelevant evidence. Estrada asserts that I.R.E. 407 is a rule of relevance and, therefore, the district court's reasoning for sustaining Estrada's second objection applies equally to her first objection. The State contends that Estrada's first objection lacked specificity and, therefore, under I.R.E. 103(a)(1), the district court's ruling on the objection is not subject to review.

Idaho Rule of Evidence 103(a)(1) provides:

A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party:

   (1) and if the ruling admits evidence, a party, on the record:

      (A) timely objects or moves to strike; and

      (B) states the specific ground, unless it was apparent from the context.

Estrada first objected "under rule of evidence regarding remedial measures." As Estrada acknowledges, although she did not cite I.R.E. 407, the language Estrada used made clear that she was objecting on the basis of I.R.E. 407. Therefore, Estrada has preserved her objection under I.R.E. 407.[1]

However, preserving an objection pursuant to I.R.E. 407 does not mean an objection to I.R.E. 401 and 402 has been preserved. Idaho Rule of Evidence 402 provides that "[r]elevant evidence is admissible unless these rules, or other rules applicable in the courts of this state, provide otherwise. Irrelevant evidence is not admissible." Evidence is relevant if it is probative,

---

[1]    The Court notes that it was Estrada, not the State, who first introduced evidence that Safe Passage sought to "update" its procedures. The doctrine of invited error applies to estop a party from asserting an error when that party's conduct induces the commission of the error. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). The purpose is to prevent a party who caused or played an important role in prompting the trial court to take action from later challenging that decision on appeal. *State v. Barr*, 166 Idaho 783, 786, 463 P.3d 1286, 1289 (2020). In short, invited errors are not reversible. *State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct. App. 1996). Because Estrada first raised the issue of procedural modifications, the invited error doctrine would preclude her from asserting on appeal that the district court abused its discretion had the State raised a defense of invited error, which it did not.

10

having "any tendency to make a fact more or less probable" and material, being "of consequence in determining the action." I.R.E. 401. Idaho Rule of Evidence 407, provides in pertinent part:

> When measures are taken that would have made an earlier injury or harm less likely to occur, *evidence of the subsequent measures is not admissible* to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

(Emphasis added.)

Despite objecting only on the basis of I.R.E. 407, Estrada is arguing that her objection under I.R.E. 407 preserved a general relevancy challenge that this Court should review de novo. There are two flaws in Estrada's argument. First, it overlooks the distinctions between the analyses applied under I.R.E. 407 and I.R.E. 401. The basic standard of relevance under I.R.E. 401 "is a liberal one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993) (addressing F.R.E. 401 which is identical to I.R.E. 401). On the other hand, like many rules in Article IV of the Idaho Rules of Evidence (entitled "Relevancy and Its Limits"), in certain circumstances I.R.E. 407 limits the admission of otherwise relevant evidence for public policy reasons. *State v. Guzman*, 122 Idaho 981, 994, 842 P.2d 660, 673 (1992). Pursuant to I.R.E. 407, the court must first determine whether the evidence is relevant and then determine if public policy reasons warrant excluding the relevant evidence if it is "evidence of subsequent remedial measures and is offered to prove negligence; culpable conduct; a defect in a product or its design; or a need for a warning or instruction." Alternatively, the court must determine whether the otherwise relevant evidence is admissible if offered for a purpose like "impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures." I.R.E. 407. Thus, while I.R.E. 402 precludes the admission of *irrelevant* evidence for any purpose, I.R.E. 407 precludes the admission of *relevant* evidence when offered for certain purposes.

Estrada has not preserved a general relevancy challenge on appeal. Although the district court ruled on the second objection that evidence of Safe Passage's procedural changes was not relevant, Estrada does not challenge the district court's ruling on the second objection. Moreover, the district court's ruling on the second objection is insufficient to preserve a general relevancy challenge on appeal to the first question. Because Estrada did not cite to I.R.E. 401 or I.R.E. 402

in either objection, and because she did not articulate any applicable language from the Idaho Rules of Evidence regarding general relevance, she has not preserved a relevancy challenge on appeal.

Second, allowing Estrada's objection under I.R.E. 407 to preserve a general relevance objection would conflict with I.R.E. 103. Although this Court previously held that a general relevancy objection can preserve other objections within Article IV, we recently clarified that in order to properly preserve an objection under I.R.E. 103, the party must either cite the number of the rule on which the objection is based, or the objection must articulate the applicable language from the rule so the ground for the objection is apparent to the trial court. *State v. Chacon*, Docket No. 47009, at *8 (Ct. App. Mar. 18, 2021). In light of our recent holding, we conclude that an objection under one of the limiting rules in Article IV does not, by itself, preserve a general relevancy objection. Instead, the party must cite I.R.E. 401 or I.R.E 402, or articulate the applicable language regarding general relevancy.

Estrada asserts that the district court erred in allowing the State to introduce evidence of Safe Passage's subsequent remedial measures but this argument is unpersuasive. Estrada's first objection was in response to the State's question: "When this was discovered back in June of 2018, did Safe Passage seek to revamp their housing assistance request program?" By asking whether Safe Passage sought to revamp its policy, the State was not attempting to elicit evidence of a specific procedural change or evidence that Safe Passage had changed its procedures at all. Instead, the State asked only whether Safe Passage *looked into* changing its housing request program; looking into implementing subsequent measures is not the kind of specific measures governed by I.R.E. 407. Therefore the district court correctly overruled Estrada's first objection.

2.      **Even if the district court erred in ruling on the objections, such error was harmless**

Even if evidence that Safe Passage considered implementing procedural changes should have been excluded for lack of relevance, any error in allowing it was harmless. As explained above, error is not reversible unless it is prejudicial. *Stell*, 162 Idaho at 830, 405 P.3d at 615. To determine whether an error was harmless, we weigh the probative force of the record as a whole while excluding the erroneous evidence and at the same time comparing it against the probative force of the error. *Garcia*, 166 Idaho at 674, 462 P.3d at 1138.

Evidence that Safe Passage considered modifying its housing assistance program after discovering Estrada's conduct had minimal, if any, probative force. The fact that Safe Passage

12

looked into modifying its procedures says little about whether Estrada committed the alleged forgery and grand theft and does not suggest that she should be convicted on an improper basis.

Having detailed the record establishing guilt above, and considering the probative value of the alleged error in relation to the entire record, admitting evidence that Safe Passage considered it might need to modify its procedures did not contribute to the jury's verdict on either charge. Therefore, even if the district court erred in allowing the evidence, the error was harmless.

## IV.

## CONCLUSION

Any error by the district court in allowing evidence of Estrada's termination from Safe Passage was harmless. The district court correctly ruled on each of Estrada's objections to the evidence pursuant to I.R.E. 407, but even if the evidence should have been excluded, the error was harmless. Accordingly, Estrada's judgment of conviction for forgery and grand theft of a financial instrument is affirmed.

Judge GRATTON and Judge BRAILSFORD **CONCUR**.